# CHARLESTON.

ROBERT B. HARRIS v. NEW YORK LIFE INSURANCE CO.

Submitted September 14, 1920.     Decided September 21, 1920.

1. INSURANCE—*Insured's False Representation as to Health and Cause of Death of Parent Avoids Policy.*

A policy of life insurance issued upon an application in which is contained a representation by the insured that one of his parents had died of measles, and was in good health until within two weeks prior to such death, may be avoided by the insurer, upon a showing that such parent died of pulmonary tuberculosis instead of measles. (p. 642).

2. SAME—*Policy May Be Avoided Where Insured Did Not Disclose That a Sister Had Died of Tuberculosis.*

A policy of life insurance issued upon an application in which is contained a statement of the insured's family history, and which the insured represents to be full and complete in every particular, will be avoided at the instance of the insurer by the failure upon the part of the insured in such application to disclose the fact that one of his sisters had died of pulmonary tuberculosis. (p. 642).

3. SAME—*Knowingly False Representation in Application as to Health of Relatives Avoids Policy.*

While the condition of health of one applying for a policy of insurance at the time such application is made, as well as the condition of the health of his relatives, is ordinarily

matter of opinion, and if the assured without knowledge that his own health, or the health of such relatives, is in any wise impaired, in good faith answers that the same is good, the policy will not be defeated, even though it turns out that such answer is not correct; yet if such answer is made with knowledge upon the part of the insured that one or more of the parties in regard to whom the inquiry is made, is afflicted with a serious malady it will constitute a false representation. (p. 642).

4.  SAME—*Policy Issued on Application Containing False Statements as to Attendance by Physicians May be Avoided.*

Statements in a policy of insurance that the assured had not been treated by any physician within a certain time for any disease or ailment, and had not consulted any physician within such time, are material representations, and the insurer has a right to rely upon the same being made upon the personal knowledge of the insured, and if they turn out to be false, a policy of insurance issued upon an application containing such false statements may be avoided. (p. 645).

5.  SAME—*Insane Person is Not a Person in "Good Health."*

An insane person cannot be said to be in good health. (p. 645).

(WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, Logan County.

Action by Robert B. Harris against the New York Life Insurance Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Brown, Jackson & Knight,* for plaintiff in error.

*E. L. Hogsett,* for defendant in error.

RITZ, JUDGE:

On the 29th of May, 1916, Sallie C. Harris, wife of the plaintiffff, applied to the defendant for a policy of insurance upon her life. The policy so applied for was issued upon an application in writing signed by her, in which she represented all of the statements therein made to be true, and to be for the purpose of obtaining said insurance, and that they might be relied upon by the company in acting upon her application. On March 21, 1917, the insured died in Florida of pulmonary tuberculosis, and, upon proof of this fact being furnished to the com-

pany, it made an investigation, and claims that it discovered that certain of the representations and statements made by the insured upon the faith of which the policy was issued, were false. It thereupon repudiated the policy and tendered to the plaintiff here the premium which had been paid thereon. This tender was refused, and this suit instituted for the purpose of recovering the indemnity provided by the policy.

The defendant says that among other statements made by the insured in her application, upon the faith of which the policy was issued, she represented that she had not consulted a physician for any ailment or disease; that she had not within five years been treated by any physician for any disease or ailment; that she undertook, in accordance with the provisions of said application, to give true, correct and full answers in regard to her family history, the answers so given being that her father had died at the age of sixty-five years from blood poison; that he had been ill one month before his death, previous to which time his health had been good; that her mother had died at the age of fifty-five years of measles, and that she had been ill for two weeks, prior to which time her health had been good; that she had two brothers and two sisters, all living, and that the health of all of them was good; that she further represented that no person in her immediate household at the time had consumption, or had recently suffered from or died of that disease; when in fact and in truth the insured had consulted several physicians for different ailments prior to the making of said application, and had been treated by several physicians for different ailments within five years prior thereto, and was at the time of the making of said application afflicted with pulmonary tuberculosis; that instead of her father's health being good up until one month prior to his death, he had been confined in an insane asylum for nine years prior thereto, afflicted with paresis; that instead of her mother dying from measles, as represented by her, she died of pulmonary tuberculosis; that instead of her having two sisters, the health of whom was good, she had had four sisters, two of whom were living, and two dead, one of whom had died of tuberculosis in the year 1907, and one of those who was

at the time living was then suffering from tuberculosis, and died shortly thereafter from that disease.

The pertinent facts appearing upon the trial of the case without substantial contradiction are: that the insured, about two or three years before the application for the policy of insurance, had been treated by a physician for about a week for influenza or grippe, and was confined to her bed during that time; that subsequent thereto, and sometime before the application was made, she was treated by the same physician for an attack of pleurisy, the said treatment extending over a period of three or four days, during which time she was confined to her room; that subsequently, and before the application was made, she was treated for a couple of weeks almost every day at the office of another physician for a very bad cold, the treatment administered being by means of what is called an inhalatorium; that subsequent to this, and a short time before the application for the policy of insurance was made, another physician treated her throat and nose for a catarrhal condition; that within a very short time, less than two months after the policy was delivered, she was treated by a physician who, upon examination, discovered that she was afflicted with active tuberculosis; that he made certain tests and experiments and demonstrated to his satisfaction that her recovery was impossible; that subsequent thereto, in the month of February, 1917, she was taken to Florida where she was treated by a physician for tuberculosis, and died of that disease in March of that year; that her mother had died about the year 1903 of tuberculosis; that her father died in April 1915, of Brights disease, in the asylum for the insane at Huntington, West Virginia, where he had been confined for nine years prior to his death; that instead of the plaintiff having two sisters who were in good health at the time of the application she had had four sisters, one of whom had died in infancy, from what cause does not appear, another of whom died in the year 1907 of pulmonary tuberculosis. There was an attempt upon the part of plaintiff to show that the representation as to the cause of the death of the insured's father was made innocently, and in the belief that he had died of blood poison, the plaintiff stating that when he and his wife went to the asylum where

her father had died they were cautioned by one of insured's brothers to be very careful not to touch any of the clothes of the deceased because of blood poison, and that they assumed from this that that was the cause of his death. There is no attempt to explain the discrepancy between the actual cause of the death of the mother and the cause represented in the application, nor is there any attempt made to explain why, when the insured had undertaken to give a full and complete family history, she neglected to state that she had a sister who died in 1907 of pulmonary tuberculosis, nor is there any explanation made of her failure to disclose the treatment she had received from various physicians within the five years before making the application, the claim in this regard being that the illnesses for which she was treated on those occasions were so trivial as not to call for any disclosures to the company in regard thereto.

Our holdings are that answers to such questions as were propounded to the insured in the application in this case ordinarily constitute representations, and not warranties, and the defendant here does not contend that they were in this case anything but representatitions. It is quite true that in order for a false representation to constitute ground for the avoidance of a contract, it must be material, but as we have repeatedly held, when the parties themselves by their contract make such a representation material, the courts are not at liberty to say that such is not the case. *Schwarzbach* v. *Protective Union,* 25 W. Va. 622; *Logan* v. *Assurance Co.,* 57 W. Va. 384; *Marshall* v. *Ins. Association,* 79 W. Va. 121; *Myers* v. *Ins. Co.,* 83 W. Va. 390. We are, therefore, constrained to hold that the representations made by the insured in her answers to the questions propounded to her are material. That they were so considered by the parties is evidenced by the fact that in the application she stated that they were full and complete, and that the insurer could rely upon them in passing upon her application for a policy of insurance; and the insurer certainly considered them material, as is shown by the fact that they were asked and specific answers demanded thereto as a prerequisite to considering her application. It is quite true, as contended by the plaintiff, that some of the representations involved call for the opinion of the insured, rather

than for any statement of an existing fact, but it is just as true that there are certain of these questions that call for answers which must be held to be statements of fact within the knowledge of the insured, and not mere matters of opinion upon her part. It may be said that the answer of the insured as to the condition of her health at the time she made the application was the expression of an opinion upon her part, and that if she acted in good faith in making said answer, believing the same to be true, there would be no false representation such as would defeat the policy. The same is true as to her answers as to the condition of the health of members of her family at said time. This cannot be said, however, as to the other answers to questions propounded in the application. She undertook to give a full and complete family history, and in answer to the question about her brothers and sisters she answered that she had two sisters living and 'two brothers living, and in the column as to the number dead, she made no answer. This was concealing from the plaintiff a fact which must have been within her knowledge, or at any rate which the insurance company had a right to believe was within her knowledge, and that is that she had a sister who had died of pulmonary tuberculosis. The application demanded of her that she give this information. The fact that she did not affiramitvely represent that she had no dead sisters cannot excuse her. She did represent that the family history as given by her was full and complete, when such was not the case. The insurance company had a right to rely upon the truth of this representation, and the same may be said as to the cause of the death of her mother. She represented that her mother died of measles, when in fact and in truth she died of pulmonary tuberculosis. Now it may be argued that the insured did not know the cause of her mother's death, and that the representation that she died of measles was harmless. We cannot say this. The representation she made as to the cause of death was a positive statement that measles was the cause thereof. If she did not know this to be so she should have been frank and truthful and stated what the real cause was; or, if her knowledge failed her in this regard, she should have so stated. If she had told the company that she was not informed

as to the cause of her mother's death, it could have instituted an investigation to discover the cause. It can scarcely be doubted; but that if the insurer had known that the insured's mother had died of tuberculosis, and that one of her sisters had died of the same disease, this insurance policy would never have been issued. As to the condition of her father's health prior to the illness which resulted in his death, it may be said that her answer was but the expression of an opinion upon her part, but this must be an honest opinion, and must be made in good faith. It appears that she knew that her father had been afflicted for nine years, and because of this affliction had been confined in an insane asylum, and notwithstanding she had actual knowledge of these facts she answered that his health was good. It is argued that he was only insane, and that this was not a disease within the meaning of the policy. We cannot agree with this conclusion. The fact that the affliction with which one is suffering is a mental disease instead of a physical disease, makes it no less a disease, and it cannot be said that, even though this answer be treated as an expression of opinion, it was made in good faith, when she knew that he was at the time of his death, and had been for a long while, confined in an asylum for the insane.

As to whether or not her answer that her health, at the time of making the application, was good was made in good faith, we think, under the facts shown here, was a question for the jury. It does not appear that just at that time she was being treated by any physician, but it does appear that very shortly afterwards it was discovered that she was badly afflicted with pulmonary tuberculosis, and that on several occasions before, which we have pointed out above, she had been under the treatment of physicians. The jury might have found under the evidence that she was honest in the expression of opinion that her health was good at that time, or they might have found that the facts with which she was acquainted did not justify that opinion. The same may be said as to her answer as to the condition of health of her sisters. It is shown that one of these sisters, a year or two before this application was made, was taken to Asheville, North Carolina, because she either had or

was threatened with pulmonary trouble, and that within a short time after the death of the insured this sister died of this trouble. Whether she was justified under the circumstances in believing that her sister had been cured of the trouble with which she was afflicted when she went to North Carolina would be a question for the jury. We cannot say as a matter of law that she might not have been entirely honest in expressing this opinion. ·

This leaves for consideration the representations made by her as to her treatment by physicians within five years preceding the making of the application, and her statement that she had not been afflicted with any disease or ailment during that time. It is argued here that the ailments with which it is shown she was afflicted during that time were so slight and inconsiderable as not to impose upon her the obligation to disclose her treatment therefor. We cannot agree with this conclusion. By the terms of the contract the parties made the representations material. The insurance company was entitled to a full and honest disclosure of things about which it made inquiry. The manifest purpose of securing this information was to give the insurance company the opportunty to consult the physicians who had treated the plaintiff, with a view to getting as full and complete information as to her condition of health as was obtainable. By failing to disclose the facts in this regard in her application the company was denied this opportunity. In *Myers* v. *Ins. Co.*, *supra*, as well as in the other cases we have cited above, it was held that these representations were material, and that the insurer had a right to rely upon the answers given to the questions asked in regard thereto. It is true, as stated in the Myers case, there may be some inconsequential troubles, for failure to disclose which the policy would not be avoided, but we are unwilling to hold that a jury could say in this case that the insured had not made a false representation when she failed to disclose the names of at least some of the physicians who had treated her, and the maladies for which such treatment was administered, as shown by the evidence.

Upon the trial of the case certain instructions were given on behalf of the plaintiff, and certain instructions asked on behalf of the defendant, none of which were given. As the case must go

back for a new trial it is necessary that we consider the propriety of these instructions. The first instruction given on behalf of the plaintiff is to the effect that the word "good" when used in a policy of insurance as to the condition of the insured's health at the time of delivery of such policy, means apparent good health, without any ostensible, known, or felt symptom or disorder, and does not include the existence of latent or unknown defects. This instruction seems to propound the law as we have above indicated. Inasmuch as the condition of insured's health at that time was simply a matter of opinion, if such opinion was given in good faith, and without knowledge that the same was not good, there would be no false representation for which the policy might be avoided, even though in fact, at the time, the insured may have been suffering from some disease of which she had no knowledge.

Instruction No. 2 given on behalf of the plaintiff to the effect that the statements and answers are representations, and not warranties, and that if the jury believed the same substantially correct they should find for the plaintiff, also states the law.

Instruction No. 3 informs the jury that if they believe from the evidence that when the insured represented that she had not suffered from any ailment or disease of the heart or lungs she made such answer in good faith, and at the time had no knowledge or suspicion that she then had tuberculosis, they should find for the plaintiff, even though they believed that such representation was in fact false, and that she was then suffering from that disease. This instruction is bad for the reason that it directs a finding in favor of the plaintiff upon that single issue. The jury might very well have believed that she was perfectly honest in making that statement, still this would not entitle the plaintiff to recover if they believed that some of the other representations which were relied upon by the defendant were in fact false. The vice of this instruction is that it excludes all of the other defenses and makes a recovery in favor of the plaintiff depend solely upon her good faith in answering that one question.

Instruction No. 4 is also bad for the reason that it makes a recovery for the plaintiff turn upon the finding upon one single

matter of defense to the exclusion of all of the others, and for the further reason that it submits to the jury the question as to whether or not the representations made by the insured as to her treatment by physicians within five years previous to the application for insurance, and as to the ailments or diseases with which she had been afflicted during that time, were material. The parties themselves made these representations material, and this question should not have been submitted to the jury.

Instruction No. 5 has really no application to the case. It tells the jury that if the insured in the application represented the cause of her father's death as blood poison, and believed this to be true at said time, then such representation was not false within the meaning of the law. The defense made by the insurance company was upon the ground that she falsely represented the condition of her father's health previous to his death, and not the cause of his death, she having stated that his health was good until the date of his last illness, when in fact this was not true. The instruction does not meet any issue raised in the case, or any defense upon which reliance was had, and, of course, could not have done the plaintiff any good, nor the defendant any injury.

Plaintiff's instruction No. 6 is bad. It is to the effect that if the insured believed when she made the application that the health of her father and mother was good previous to their last illness, and that the health of her two sisters and two brothers was good at the time she made the application, and in good faith answered the questions the way she did, then they should find for the plaintiff. This excludes every other defense made by the defendant, and makes the verdict turn upon this representation alone. The instruction is bad for another reason. The jury could not have found that the insured believed her father's health was good previous to his death. As to the health of her mother prior to her death, and the health of her brothers and sisters, this, of course, was matter of opinion, and if she was honest in her opinion that was all that could be required of her, but the evidence of her brother shows that she was fully informed as to her father's condition for nine years before his death, and the jury could not be permitted to say that she acted

in good faith when she answered that his health was good until a
month before his death.

Instruction No. 7 given on behalf of the plaintiff is to the
effect that if the jury believed that insured's father was con-
fined in the asylum, as above set out, still they should find for
the plaintiff, unless they find that this fact, which she failed to
disclose in her answer, was material to the risk, was known
to her, and was believed by her to be material to the risk, and
was intentionally withheld from the defendant.    This instruc-
tion is bad for  the reason assigned for disapproving several of
the foregoing instructions, to-wit, it makes a recovery in favor
of the plaintiff dependent upon a finding upon a single ground
of defense, and excludes the consideration of all the others.    It
is further bad for the fact that it makes the jury the judges of
the materiality of her answer, when, as we have before stated,
the parties determined this question themselves.    Neither the
jury nor the insured had any right to determine that the answer
to this question was immaterial.

Instruction No. 8 given on behalf of the plaintiff is to the
effect that if the representation made by the insured that no
person in her immediate household was then ill with consump-
tion was made in good faith, they should find for the plaintiff.
This is bad for the reason that it predicates a verdict in favor
of the plaintiff upon the jury's finding upon this single matter
of defense, and excludes the consideration of all the other
defenses set up by the defendant.

Instruction No. 9 given on behalf of the plaintiff tells the
jury to find for the plaintiff, notwithstanding the failure of the
insured to disclose the fact that her sister died in 1907 of pul-
monary tuberculosis, unless they find that this disclosure
was material, or was intentionally withheld  by her from the
defendant.    This instruction is bad because it makes a finding
in favor of the plaintiff dependent upon this single matter of
defense, and excludes consideration of all the others, as pointed
out above.    It is also bad because it allows the jury to pass
upon the materiality of the representation.    The answer to this
question called for a statement of fact peculiarly within the
knowledge of the insured, and the insurance company had a
right to believe that it was given upon such knowledge, and to

rely thereon, and neither the insured nor her beneficiary can say that while the answer given was not true, if she did not consider it material, or if the jury did not consider it material, an incorrect answer thereto will not defeat recovery.

Instruction No. 1 offered by the defendant and refused is a direction to the jury to find a verdict for the defendant. From what we have said it is manifest that this instruction in the state of the case at the time it was offered should have been given.

Instruction No. 2 was properly refused. It tells the jury that if they believe that the insured was not in good health when the policy was delivered there can be no recovery. As we have before shown, the condition of health of the assured was a matter of opinion, and if she was honest in her belief that her health was good, then the fact that she may have been suffering from some insidious disease, of which she had no information, would not bar recovery.

Instruction No. 3 was likewise properly refused. It would have told the jury that an answer to a question which amounted to no more than an opinion of the insured was an answer upon her own knowledge.

Instruction No. 4 offered by the defendant should have been given. It tells the jury that the answers to the questions as to whether or not the assured had been treated by physicians within five years, or had been afflicted by any disease or ailment within that time, must be taken to be answers made upon her knowledge, and that if they were false in fact a recovery could not be had.

Instruction No. 5 covers the same phase of the case in a little different form, and should have been given.

Instruction No. 6 was properly refused, for the reason that it told the jury that the answers to the questions made by the assured which it is claimed were false, including those which are matters of opinion, as well as those which may be said to be matters of fact, based upon the assured's personal knowledge, were all matters of the latter character.

Instruction No. 7 is, perhaps, not an incorrect statement of the law, but it more favorable to the plaintiff than was necessary. It tells the jury that if they believe that the answers which were

made upon the personal knowledge of the insured were untrue, and that the defendant acted upon these answers believing them to be true, and did not know that they were untrue, and would not have issued the policy if it had known that they were untrue, then there can be no recovery.    It need not have gone further than to have informed the jury that if they believed these answers were untrue, there could be no recovery, for they were made material by the parties themselves, and it was not necessary for the defendant to show that it relied upon them and issued the policy upon the belief that they were true, for this was the agreement of the parties under the contract.

From what we have said it follows that the judgment of the circuit court of Logan county complained of will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed and remanded.*