# CHARLESTON.

WILL STOCKTON *v.* CONTINENTAL LIFE INSURANCE COMPANY

(No. 6126)

Submitted February 7, 1928. Decided February 21, 1928.

1.   INSURANCE—*False Statements, Although Made in Good Faith, Representing Material Fact as True, Without Knowledge Thereof, Avoid Policy.*

Though treated as representations, statements and declarations in an application for life insurance, untrue in a material regard and tending to deceive the insurer, representing some material fact as true without knowing it to be true, will avoid the policy because of the falsity thereof, although not made with intent to deceive or mislead.   (p. 244.)

(Insurance, 32 C. J. § 513.)

2.  SAME—*That Specific Answer is Sought and Obtained in Life Insurance Application is Ordinarily Proof That Matter is Material; Ordinarily, Specific Answer in Application for Life Insurance Will be Treated as Material; Misrepresentation That Insured Had Not Had Tuberculosis Held to Prevent Recovery on Life Policy.*

> The fact that a specific answer is sought and obtained to a question in an application for life insurance, is, ordinarily, proof that the parties regarded the matter material, and in such case the answer will be treated as a material representation.   (p. 245.)
>
> (Insurance, 32 C. J. § 514; Life Insurance, 37 C. J. ·§ 178.)
>
> (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, McDowell County.

Action by Will Stockton against the Continental Life Insurance Company. Verdict for defendant. Judgment setting aside the verdict and awarding a new trial, and defendant brings error.

> *Judgment reversed; verdict reinstated; judgment entered thereon.*

*Sanders, Crockett, Fox & Sanders,* for plaintiff in error.
*Cecil Riley,* for defendant in error.

MILLER, PRESIDENT:

This action was brought by notice of motion on a policy of insurance on the life of Mary Lee Hoston, by her father Will Stockton, the beneficiary named therein. The defendant pleaded non-assumpsit, nil debet, and fraud in the procurement of the policy. The trial court set aside a verdict for the defendant, and awarded the plaintiff a new trial.

The defendant introduced evidence to prove that the insured was afflicted with tuberculosis, the disease from which she died, at the time the application for insurance was made; and that the plaintiff, after her death, released the defendant from any claims or demands arising under the policy, upon the payment to him of the amount of the premiums paid thereon.

The name of Mary Lee Hoston is signed to the application,

with a cross-mark at the left of the signature, witnessed by
F. P. Nichols, the agent who solicited the insurance and took
the application. Plaintiff testified that he was not present
when the application was filled out; that ''She took it out and
didn't have any money and I let her have the money. * * *
I was not at the house. The man went to the house and he
came back and told me she didn't have the money and she
wanted it.'' He says that he paid all the premiums.

Nichols testified that he went to where plaintiff was work-
ing and spoke to him about insurance, and that Stockton
''said he would take out some on his daughter, and I wrote
him the application then, and I delivered the policy, and I
didn't see the daughter when I delivered it.'' Nichols also
said that he wrote the daughter's name at the bottom of the
application, because the plaintiff could not write, and that
Stockton made his mark. He swears that he asked plaintiff
every question printed on the application blank, and inserted
therein plaintiff's answers to each. The following are the
questions and answers material to the issues here involved:
''Q. Present state of health? A. Good. Q. Has the said
life been under treatment in any dispensary, hospital or asy-
lum, or been an inmate of an almshouse or any other like in-
stitution? A. No. Q. Has the life proposed ever suffered
from any of the following diseases? State what disease,—
Consumption, (And a number of other diseases not material
here). A. No. Q. Have you been attended by a physician
during the past twelve months? A. No. Q. When. A.
None. Q. If so, for what disease? A. None.''

The trial court refused to submit to the jury any of the
instructions offered by counsel for the parties, and, on its own
motion, gave four several instructions, intended to cover the
theories of both parties as developed on the trial. After ver-
dict for the defendant, on plaintiff's motion to set the same
aside, the court, as disclosed by a written opinion filed with
and made a part of the record, decided that the jury had been
misdirected, and set the verdict aside and awarded the plain-
tiff a new trial.

By the first instruction given, the jury were told that if
they believed from the evidence that the plaintiff, at the time

he made his mark to the receipt for return of premiums and the release of all claims against the defendant, did not understand what he was signing, they should find for him in the amount of the policy less $11.10, the amount of the premiums returned, provided they should find that the questions in the application were not read to him and he did not make the answers therein contained, and further, that the insured was in sound health at the time the policy was issued and delivered.

The second told the jury to find for the defendant if they believed the plaintiff understood what he was signing when he made his mark to the receipt. The third to find for the defendant if they believed the plaintiff answered the questions contained in the application; the fourth to find for the defendant if they believed the insured was in good health when the policy was issued and delivered.

It will be noted that the three latter instructions are the converse of the propositions stated in the first, and that each of the three bound the jury to find for the defendant if they found the fact stated therein to be true.

Instruction No. 2 was perhaps not complete, in that it did not take into consideration the representations of the defendant which induced plaintiff to sign the receipt and release. Plaintiff testified that he did not remember making his mark on the release, that he may have done so, but that he understood the $11.10 was in part payment of his claim against the defendant company, and that the company would pay the balance of the policy when he returned the policy to its manager at Bluefield. The question of fact as to whether or not he understood what was contained in the release was submitted to the jury, but if he was induced to accept the return of the premiums by representations not in fact true, he would not be bound by the release. However, in view of the fact, to be hereinafter discussed, that the insurer was induced to issue the policy by representations fraudulent in law made in the application, this question becomes immaterial in this case, and the giving of the instruction in the form it was submitted to the jury, was not prejudicial error.

It is an uncontroverted fact that the insured was admitted

to a hospital on February 11, 1926, and discharged two weeks later. Plaintiff admitted this fact, but testified that he did not know she was there for tuberculosis, and that the attending physician, Dr. Harrison, told him she was suffering from appendicitis and sent her to the hospital. He says she was not operated on because she was too weak at the time she was there. The following certificate was admitted in evidence, by stipulation of counsel: "This is to certify that I treated Mary Lee Hoston of Kyle, W. Va., at the request of her father, Wm. Stockton, and referred her to Harrison Memorial Hospital, Kimball, W. Va., with a diagnosis of Tuberculosis in February, 1926. I treated said patient before and after her return from said Hospital several times and found her condition serious and incurable. I have examined the records of the Harrison Memorial Hospital and found she was confined in said Hospital from February 11th to February 25th, 1926, and discharged unimproved. (Signed) J. A. Bennett, M. D." The application for insurance is dated March 5, 1926, eight days after the girl's discharge from the hospital. She died February 6, 1927, of tuberculosis.

Regardless of whether the insured or the plaintiff answered the questions in the application, it is clear that the policy was procured by representations fraudulent in law. It must be admitted that the questions above quoted were all answered falsely, if not intentionally so. And it is not always necessary that the applicant intend to misrepresent the fact, where the fact elicited by the question is a material one. In *Myers* v. *Mutual Life Insurance Company*, 83 W. Va. 391, point 5 of the syllabus, it was held: "A policy of insurance issued upon an application containing statements and declarations which are treated as representations will not be avoided because of the falsity thereof, unless they are untrue in a material regard, and are made with the intent to mislead or deceive, or are a statement of some material fact as true without it being shown to be true, and which has a tendency to mislead." *Schwartzbach* v. *Protective Union*, 25 W. Va. 622; 14 R. C. L. 1021.

Were the statements of fact elicited by the questions in the application here involved material ones? It seems to be set-

tled law in this State that the fact that a specific answer is sought and obtained in regard to a particular question, is proof that the parties considered the matter material, and will be treated as a material representation. *Myers* v. *Life Ins. Co., supra; Logan* v. *Life Assurance Society,* 57 W. Va. 384; *Marshall* v. *Insurance Association,* 79 W. Va. 121; *Schwartzbach* v. *Protective Union, supra.* In the *Schwartzbach case* it was held: "Though the policy be construed as not warranting the truth of the answers of the insured, yet if these answers to specific questions are misrepresentations, the policy will be avoided, whether the court or the jury regarded the answers as material or not; for the parties by putting and answering such questions have declared that they regarded them as material." The same language is used in point four of the syllabus in the *Marshall case.* It is true, as said in the *Logan case,* that "the terms 'sickness' and 'disease' do not mean a trifling illness nor an occasional physical disturbance resulting from accidental causes and not permanent in their effects, nor temporary illness which readily yields to processional treatment and leaves no permanent physical injury or disorder calculated to have a tendency to shorten life." This language was quoted from Joyce on Insurance, section 1849, which the author illustrates by general questions in regard to the applicant's health in the past; but in section 1914, of the same work it is said: "By making inquiry, the fact inquired about is made material, as it is brought into prominence by very force of the fact that information is thereby sought concerning that particular matter; and for the same reason a matter, even though it is not in itself material, is made material by a specific inquiry, and in both such cases a misrepresentation of fact avoids the policy, as a general rule; and it is not necessary to show that the fact so inquired about was material to the risk."

The question in the application in regard to whether the insured had ever suffered from consumption was a specific inquiry; and it is admitted that the answers to the more general questions were untrue, and known to be so by the applicant, either the insured or the plaintiff. Legal fraud, if not actual fraud, is clearly established by plaintiff's own evi-

dence; and a directed verdict for the defendant would have had to stand.

Whether the insured or the plaintiff answered the questions in the application, both knew that the answers to the general questions were untrue, and under the authority of the cases cited above and quoted from, a false answer to the specific question as to the diseases enumerated therein, whether made with the intent to deceive or not, being a statement of a material fact as true without knowing it to be true, must be regarded as a material representation avoiding the policy because of the falsity thereof.

The judgment of the trial court setting aside the verdict of the jury will be reversed, the verdict reinstated, and judgment entered thereon.

*Judgment reversed; verdict reinstated; judgment entered thereon.*