EVERT C. KINCAID *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

(No. 8108)

Submitted November 20, 1935.  Decided December 3, 1935.

*Charles W. Louchery* and *Kendall H. Keeney,* for plaintiff in error.

*Lilly & Lilly* and *S. A. Powell,* for defendant in error.

HATCHER, JUDGE:

This action involves the effect on a life and disability insur-

ance policy of untrue health statements in the application for the policy. The plaintiff is the holder of such a policy, and recovered a judgment thereon against the defendant.

The plaintiff is a farmer. He was solicited in June, 1931, to make application for the policy by Page Morrison and T. B. McQuain. Morrison was "insurance salesman" and "soliciting agent" of defendant. He also was a district supervisor in charge of defendant's local agents. (His district comprised all of West Virginia and parts of three other states.) McQuain was a local soliciting agent of defendant. Plaintiff testified that when approached by the two, he informed them he did not consider himself a desirable insurance risk because he had suffered a fractured skull in 1929 serious enough to require hospitalization for several days. However, he had been in seemingly sound health since the injury; so the insurance agents insisted that he submit to a physical examination by Dr. Rymer, the defendant's physician, which the plaintiff did. In connection therewith the doctor read to plaintiff certain questions on defendant's printed application form, respecting plaintiff's past health and medical treatment, purported to record plaintiff's answers thereon and had him sign the application. Both Morrison and McQuain countersigned the application. Plaintiff testified that in response to Dr. Rymer's interrogation he related to the doctor his injury and consequent treatment in 1929. The answers written in the application by the doctor negatived any past injury. The application was forwarded to the defendant and was attached to and made a part of the policy in question. Morrison and McQuain delivered the policy to plaintiff, and congratulated him on passing a favorable physical examination. The plaintiff testified that he did not read the application when he signed it and did not read either the application or the policy until this controversy arose.

Morrison paid the first (annual) premium ($434.40) for plaintiff, accepting the latter's notes (without interest) which were later paid. When the second premium became due, plaintiff considered letting the policy lapse; but both McQuain and Morrison urged him to pay the premium, saying that he could not buy another policy "as good" as the instant one,

and that if he did not have the full amount of the premium, arrangements could be made with the defendant to carry him, which was done. Plaintiff commenced to suffer mental disturbances in the fall of 1932, which incapacitated him from regular work. His malady continued and in the spring of 1933, he filed with defendant a disability claim which was rejected. The defendant also notified him that, having learned of the falsehood of certain material answers made by him to questions in his application for insurance, the disability and double indemnity provisions of his policy were rescinded. The defendant tendered plaintiff the premiums paid for those provisions, which tender was refused. Plaintiff was examined shortly before the trial herein (July, 1934) by a neurologist who testified that, in his opinion, the plaintiff had neurasthenia, which permanently disabled him from performing any sustained physical or mental work, and that there was no causal connection between plaintiff's injury in 1929 and his present condition. No testimony opposed this opinion.

Dr. Rymer denied that he was informed by plaintiff of his 1929 injury and treatment when the latter was answering the questions in his application for the policy. Morrison testified that the plaintiff's testimony was "substantially correct"; that plaintiff did inform the witness and McQuain of his injury and treatment in 1929, but that the witness did not impart the information to the defendant because, as he said, "that was out of my authority." McQuain was not called as a witness.

The jury found a general verdict for plaintiff and in addition thereto answered in his favor a special interrogatory asking if he informed Dr. Rymer of the 1929 accident and the treatment incident thereto.

The defense is based on certain provisions in the application and policy. The application is in two parts. Part 1 contains the following covenant: "I hereby agree * * * that no agent or other person except the President, Vice-President, the Secretary, the Treasurer or a Registrar of the Society has power to make or modify any contract on behalf of the Society or to waive any of the Society's rights or require-

ments, and that no waiver shall be valid unless in writing and signed by one of the foregoing officers. All of the foregoing answers and all those contained in Part II hereof are true, and are offered to the Society as an inducement to issue the policy or policies for which application is hereby made.''

The policy covenants that it and the application (attached to the policy) constitute the entire contract between the parties, and that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties.

The defendant's brief contends that because of those covenants, the false answers in the application defeat plaintiff's right of recovery. Numerous cases are cited in the brief as supporting the contention. The citations are not apposite, however, because they present facts or policies or both which are materially different from those here. For example, in our own cases of *Myers* v. *Ins. Co.*, 83 W. Va. 390, 98 S. E. 424; *Harris* v. *Ins. Co.*, 86 W. Va. 638, 104 S. E. 121; *Woody* v. *Ins. Co.*, 105 W. Va. 215, 141 S. E. 880, and *Stockton* v. *Ins. Co.*, 105 W. Va. 240, 141 S. E. 878 (all cited by defendant), truthful answers were not given the medical examiner by the applicant. Here, the verdict of the jury says that the plaintiff spoke the truth to the examiner. Again, in *Shamblen* v. *Woodmen*, 105 W. Va. 252, 142 S. E. 447 (especially relied upon by defendant), both the facts and the policy provisions were materially variant from those here. There, false answers were intentionally made by the applicant at the suggestion of the representative of the Woodmen. After which, the answers were read to the applicant, who then signed a certificate (required by, and a part of, the policy) stating that he had verified each answer and that each was true; and agreeing that the exact truth of the answers should be a condition precedent to a binding insurance contract, and that no information given to the soliciting agent should bind the insurer. Here, the application did certify that the answers were true, but contained none of the other rigid covenants of the Shamblen application.

Counsel for plaintiff point out that he does not claim a modification or waiver by defendant's agents of any of the

policy requirements (which the application forbids); that the policy herein does not repudiate information given to the soliciting agents, or provide that it should be void if a false answer was recorded in the application (as did the policy in the *Shamblen* case). Counsel take the following position: that the two soliciting agents and the medical examiner were acting for and represented the defendant in preparing plaintiff's application; that he had the right to assume that his answers had been correctly inscribed by the examiner on the application form when it was presented to him for his signature; that his failure to read it is doubly excused since the countersignature of the two soliciting agents gave him double assurance that the application was correctly prepared; and that the information of his injury in 1929 given both to the agents and to the examiner must be taken as information to defendant itself.

We are of opinion that counsel's position is well taken. It is apparent that the medical examiner was acting for the defendant in filling out the application, and that the two soliciting agents were also acting for defendant in inducing plaintiff to make the application. The application form did not notify plaintiff of any limitation on the authority of defendant's examiner as an auditor or recorder of the answers to health questions (as was contemplated by Mr. Cooley in his comments, 8th Vol. Briefs on Ins., Supplement [2d Ed.], p. 4142, referred to in defendant's brief). In the absence of such a limitation, it is familiar law that "An agent of an insurance company authorized to * * * forward applications for acceptance to the company must be deemed the agent of the company in all he does in preparing the application." *Deitz* v. *Ins. Co.,* 31 W. Va. 851, 8 S. E. 616. Accord: *Medley* v. *Ins. Co.,* 55 W. Va. 342, 346, 47 S. E. 101. Having imparted correct information to the representatives of defendant, the plaintiff (in the absence of restrictive covenants) had the right to assume that his application, prepared by one representative (the examiner) and approved by the other two representatives (the soliciting agents), would contain that information. Their failure to have the application do so, must be taken as the failure of the defendant itself, and, accord-

ingly, constitutes no defense to this action. *Bays* v. *Association,* 114 W. Va. 164, 166-7, 171 S. E. 253.

The defendant's brief charges error to a hypothetical question asked the neurologist and to the instructions given on behalf of plaintiff. When the question was propounded, the defendant's counsel interposed a general objection. They were asked to be more specific and refused. Under such circumstances, we are of opinion not to review the question. *State* v. *John,* 103 W. Va. 148, 154-5, 136 S. E. 842; *Oil Service* v. *Surety Co.,* 105 W. Va. 130, 134, 141 S. E. 626. The instructions, being in harmony with our rulings herein, need no specific comment.

The judgment of the circuit court is accordingly affirmed.

*Affirmed.*