FRANKLIN BLAIN MOORE AND IDA MADELINE MOORE

*v.*

UNITED BENEFIT LIFE INSURANCE COMPANY

(No. 11091)

Submitted April 19, 1960.     Decided July 22, 1960.

550

McCluer, Davis, McDougle, Stealey & Morris, John R. Morris, for plaintiff in error.

G. F. Hedges, Jr., J. M. Harper, Ryan & Scott, for defendants in error.

HAYMOND, JUDGE:

In this action of assumpsit instituted in the Circuit Court of Calhoun County in 1958, the plaintiffs, Franklin Blain Moore and Ida Madeline Moore, seek to recover from the defendant, United Benefit Life Insurance Company, a corporation, the amount of a policy of insurance issued by the defendant upon the life of Nancy Lynne Moore, infant daughter of the plaintiffs, in which the plaintiffs are the named beneficiaries. Upon the trial of the case the jury returned a verdict in the amount of $3,350.00. By final order entered February 24, 1959, the circuit court overruled the motion of the defendant to set aside the verdict and grant it a new trial and entered judgment upon the verdict for the amount of the verdict and costs. To that judgment this Court granted this writ of error and supersedeas upon the application of the defendant.

To the declaration, which followed the statutory form and with which was exhibited a copy of the policy of insurance, the defendant filed its specifications of defense in which it charged that the plaintiff Franklin Blain Moore had made false answers to certain questions set forth in the application which rendered the policy of insurance void, its special plea of fraud in the procurement of the contract of insurance, and its plea of the general issue. The plaintiffs filed

their special reply to the specifications of defense and their special reply to the special plea of fraud, and the defendant filed its rejoinders and its demurrers to the special replies of the plaintiffs. The demurrers to the special replies were overruled by the court and issue was joined on the foregoing pleadings.

The plaintiff Franklin Blain Moore who was only slightly acquainted with Haeman Gainer, a representative of an insurance agency which acted as an agent for the defendant, was solicited by Gainer to purchase insurance upon the life of Nancy Lynne Moore, the infant one year old daughter of the plaintiffs, who was born on October 16, 1956; and on the evening of October 19, 1957, Gainer went to the home of the plaintiffs for the purpose of obtaining their acceptance of a policy of insurance. At the time of Gainer's visit, which lasted approximately an hour, the plaintiffs, their infant daughter and Gainer were the only persons present when the written application, on the form provided by Gainer, was completed and signed by the plaintiff Franklin Blain Moore. After the application was completed by the insertion of the answers to the various questions set forth in the application and the signature of the plaintiff Franklin Blain Moore, it was delivered to Gainer and the policy of insurance, upon which the plaintiffs seek to recover in this action, was issued by the defendant upon the life of Nancy Lynne Moore. Approximately a month after the application was signed and delivered to Gainer, the policy of insurance was delivered by Gainer to the plaintiff Ida Madeline Moore at the home of the plaintiffs and the policy, with a photographic copy of the application attached, was delivered by her to her husband who placed it in a chest in his home where it remained without having been read by the plaintiffs until after the death of Nancy Lynne Moore which occurred on December 16, 1957. At the time the application was signed and delivered to Gainer the plaintiff Franklin Blain Moore paid him the annual premium of $31.14 which the defendant, after it re-

fused to pay the claim of the plaintiffs for the face amount of the policy, has offered to refund to the plaintiffs who have declined to accept it. The foregoing facts are undisputed.

During the time the application was being prepared Gainer, who sat on a couch a few feet from the plaintiff Franklin Blain Moore, read to him certain questions and requested answers to them from the plaintiffs and answers were inserted in the application by Gainer. To a number of the questions the answers inserted in the application by Gainer were correct, but other answers inserted in the application to certain questions were not correct or were not complete. The evidence on that point is conflicting. The plaintiff Franklin Blain Moore testified that to such questions as were propounded to the plaintiffs by Gainer the answers which they gave were true and correct; that Gainer did not insert in the application the answers actually made by the plaintiffs but instead inserted different and incorrect answers to some of the questions; that he did not ask the plaintiffs all the questions contained in the application, or obtain answers to all of them; that he did not ask or receive any answer to question 15; that they did not read the application or the policy, except to see that their names and the name of their child were correct, until after the death of their infant daughter and did not know until then that the answers inserted by Gainer were incorrect and different from those given to him by the plaintiffs; and that the plaintiff Franklin Blain Moore did not read the application because he assumed that Gainer had correctly recorded the answers actually given by the plaintiffs. The testimony of the plaintiff Ida Madeline Moore was substantially similar to that of her husband. On the contrary Gainer testified that he asked the plaintiffs all the questions contained in the application; that they made answers to all of them; that he correctly inserted in the application the answers made to him by the plaintiffs; that the plaintiff Franklin Blain Moore had an opportun-

ity to read the application before he signed it; and that Gainer did nothing to induce the plaintiff Franklin Blain Moore not to read the application before he signed it.

After the plaintiffs notified the defendant of their claim for payment of the insurance the defendant made an investigation concerning the health of the insured and, having learned that answers to questions 6(d), 7, 8(a) and 8 (b) were false, denied liability under the policy of insurance. The plaintiffs then instituted this action.

The foregoing questions and the answers to them contained in the signed application are: "6(d) Is the Child dumb, deaf or blind, or is there any other infirmity or physical deformity? NO; 7. Name below all causes for which Child has consulted a physician in the last ten years: NONE; 8(a) Has the Child now, or has Child ever had, any other disease or injury? NONE"; and "8(b) Is the Child now in good health? YES." The application also contained this question and this answer to it: "15. Do you hereby declare that all statements and answers herein are full, complete and true, whether written by your own hand or not, and agree that they are to be considered the basis of any insurance issued hereon, do you further agree that there shall be no liability hereunder until a policy shall be issued to the Child and delivered to you while said Child is in good health, and free from injury, and the first premium thereon actually paid in cash during the Child's lifetime, and that your acceptance of any policy issued on this application, whether or not upon the form applied for herein shall constitute a ratification by you of any change of the form of the policy or correction in or addition to the application, made by the Company, photographic copy of which shall constitute sufficient notice to you of the change made? Yes."

The evidence is undisputed that the child had been hospitalized and treated by Dr. Arch M. Jones at Parkersburg, West Virginia, during the period June

14 to June 20, 1957, for acute tonsilitis, acute bronchitis and hyperchronic anemia; that during this period the child was given two blood transfusions; that none of this information was contained in the answers in the application; that on December 16, 1957, less than two months after the policy was issued, the child died; and that the cause of death, as set forth in the death certificate, was bronchitis.

As heretofore indicated, on the factual question as to what information was actually given to the solicitor by the plaintiffs and whether such information was correctly inserted by him in the answers in the application, there is conflict in the testimony. On this factual question, however, the jury, by its verdict, found 'that the plaintiffs had made true answers to the questions and that false or incorrect answers were inserted in the application by the agent of the defendant without the knowledge of the plaintiffs.

The principal errors on which the defendant relies for reversal of the judgment of the circuit court are the action of the court (1) in refusing to give Instruction 1, which would have directed the jury to return a verdict for the defendant, and Instructions 2, 2c and 2e offered by the defendant; and (2) in refusing to set aside the verdict because it is against the weight of the evidence.

It is clear that Gainer, who solicited the purchase of the insurance by the plaintiff Franklin Blain Moore, was the agent of the defendant in the preparation and the completion of the application by the insertion of the answers contained in it. Section 13, Article 7, Chapter 33, Code, 1931, provides that any person who shall solicit an application for insurance shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured. See also *Meadows v. Peoples Life Insurance Company,* 118 W. Va. 404, 191 S. E. 852.

Upon the conflicting evidence given by the plaintiffs and the agent of the defendant concerning the answers actually given to the questions in the application and the action of the agent in inserting answers in the application the jury found in favor of the plaintiffs and its verdict, based upon conflicting evidence, will not be disturbed by this Court. This Court has said in many cases that it is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony of witnesses regarding them is conflicting and that the finding of the jury on such facts will not be disturbed by this Court. *Lewis v. Mosorjak,* 143 W. Va. 648, 104 S. E. 2d 294; *Davis v. Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Gilkerson v. Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Thorn v. Addison Bros. and Smith,* 119 W. Va. 479, 194 S. E. 771. When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it. See *Harless v. Workman,* 145 W. Va. 266, 114 S. E. 2d 548; *Lewis v. Mosorjak,* 143 W. Va. 648, 104 S. E. 2d 294; *Davis v. Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Wilson v. Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher v. Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Morris v. Nelson,* 136 W. Va. 722, 68 S. E. 2d 9; *Davis v. Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Dangerfield v. Akers,* 127 W. Va. 409, 33 S. E. 2d 140; *Webb v. Brown and Williamson Tobacco Company,* 121 W. Va. 115, 2 S. E. 2d 898; *Ware v. Hays,* 119 W. Va. 585, 195 S. E. 265; *Graziani v. Fimple,* 110 W. Va. 383, 158 S. E. 658; *Simms v. Chambers,* 105 W. Va. 171, 141 S. E. 788; *Ercole v. Daniel,* 105 W. Va. 118, 141 S. E. 631; *City of Charleston ex rel. Kissel v. De Hainaut* 95 W. Va. 202, 120 S. E. 524; *W. E. Deegans Coal Company v. Logan-Pocahontas Fuel Company,* 94 W. Va. 30, 117 S. E. 621; *Rush v. Buckles,* 93 W. Va. 493, 117

S. E. 130; *Phenix Fire Insurance Company v. Virginia-Western Power Company,* 81 W. Va. 298, 94 S. E. 372; *Keenan v. Donohoe,* 70 W. Va. 600, 74 S. E. 859; *Sisler v. Shaffer,* 43 W. Va. 769, 28 S. E. 721; *Miller v. Franklin Insurance Company,* 8 W. Va. 515.

The defendant vigorously insists that the circuit court should have given the peremptory instruction offered by the defendant and should have directed a verdict in its favor because the plaintiffs should have read the application, a photographic copy of which was attached to the policy, and by so doing should have learned of the false answers to questions 6(d), 7, 8(a) and 8(b) that had been incorrectly inserted in the application; and that the failure of the plaintiffs to disavow or correct such answers forfeited the policy of insurance. In support of this contention the defendant cites and relies upon *Christian v. State Farm Mutual Automobile Insurance Company,* 144 W. Va. 746, 110 S. E. 2d 845; *Faulkiner v. Equitable Life Insurance Company,* 144 W. Va. 193, 107 S. E. 2d 360; *Saltesz v. The Sovereign Camp of the Woodmen of the World,* 110 W. Va. 513, 159 S. E. 513; *Shamblen v. Modern Woodmen of America,* 105 W. Va. 252, 142 S. E. 447; *Stockton v. Continental Life Insurance Company,* 105 W. Va. 240, 141 S. E. 878; and *Harris v. New York Life Insurance Company,* 86 W. Va. 638, 104 S. E. 121. The facts in those cases readily distinguish them from, and those decisions do not control the decision in, the case at bar.

In the *Christian* case the applicant knew, at the time the application was being prepared by the agent of the insurer and before the applicant signed it, that it contained a false statement to the effect that prior insurance of the applicant had not been cancelled by any insurer. On those undisputed facts, this Court held that the insurer was not precluded from relying upon the falsity of the answer in the application when the applicant knew at the time the application was prepared and before he signed it that it was written falsely in order to defraud the insurer.

In the *Faulkiner* case the application was apparently prepared by the agent of the insurer. It contained questions which required the applicant to state whether he had high blood pressure or had gained or lost weight during the preceding year and whether he had been examined or treated by a physician during the past five years. Within a year before he signed the application the applicant was twice examined by a physician who informed him that he was overweight, though he had lost some weight, and that he had a rapid heart and a high blood pressure. Notwithstanding his full knowledge of these facts the applicant signed the application which contained answers that he had never had high blood pressure and had not gained or lost weight during the past year and that he had not been examined or treated by a physician for the past five years. This Court held that the false answers to the questions forfeited the policy and rendered it void. The opinion contains statements to the effect that there was some question as to whether the agent of the defendant inserted the proper answer in the application to the question which required the applicant to state whether he had been examined or treated by a physician within the past five years and that the trial court did not consider the answer to that question; but there is no showing, as here, that at the time the applicant in the *Faulkiner* case signed the application he did not know that it contained a statement that he had never had high blood pressure and had not gained or lost weight during the preceding year.

In the *Saltesz* case the question of the effect of the failure of the agent of the insurer to record correctly in the application the answers given by the applicant was not involved or considered by the court. In that case, because of the failure of the applicant to make full disclosure in the application of the facts that he had been examined by a physician within five years, and because of his answers that he had not had palpitation of the heart and that he was in good health

when the application was made and the policy delivered, all of which answers were untrue, though warranted to be true, this Court held the policy to be forfeited even though the answers had been made in good faith.

In the *Shamblen* case, the questions and the answers in the application were by the certificate of insurance declared to be warranties and the agent of the insurer, whose authority with respect to the application for insurance was expressly limited by the terms of the application, suggested and inserted in the application answers which both he and the applicant at the time knew to be false. In that factual situation this Court held that the insurer was not estopped to contest the policy on the ground of misrepresentation in the application merely because a subordinate agent of the insurer had knowledge of the actual conditions.

In the *Stockton* case it clearly appears that the answers to the general questions in the application were untrue and known to be untrue by the applicant and the insured and that their conduct in connection with the application constituted legal fraud.

In the *Harris* case the question of the effect of the failure of the agent of the insured to record correctly in the application the answers given by the applicant was likewise not involved or considered by the court. In that case the wife of the plaintiff signed an application for insurance upon her life, in which she represented that all of the statements in the application were true, that they were made for the purpose of obtaining insurance, and that they might be relied upon by the insurer in acting upon the application. It clearly appeared that the applicant made false or incomplete statements in the application concerning the health of one of the parents of the applicant and the nature of the disease from which such parent died, concerning the family history of the applicant and the nature of the disease from which one of her sisters had died, and concerning treatment by a physician

within a specified time, and because of these false statements this Court held that the policy of insurance issued upon the application should be avoided.

The basis of decision in all the last above cited cases is that the applicant actually made false answers to the questions in the applications and either knew, or failed to show that he did not know, that the answers inserted in the applications were likewise false in fact; and for that reason the policies of insurance were forfeited and rendered void.

Though there is some conflict in the decisions, the general rule, supported by the great weight of authority, is that if an application for insurance is drawn by an agent of the insurer, who fills in false answers to the interrogations contained in the application, which are truthfully answered by the insured without fraud, collusion or actual knowledge of the insured or the existence of circumstances from which constructive knowledge of such falsity might be imputed to him, the insurer can not rely upon the falsity of such answers in seeking to avoid liability under the policy issued upon the application. Annotation II, 81 A.L.R. 835. Here the plaintiff Franklin Blain Moore testified, and the jury found, that he made truthful answers to the questions propounded to him, that he did not read the application or the policy, that he did not know that the answers inserted in the application by the agent were false or different from those given to him by the plaintiffs, and that he did not know that such answers were false or incorrect until after the death of his infant child. The evidence does not show the existence of any fraud, collusion or actual knowledge of the plaintiffs of the false answers inserted in the application by the agent or of any facts or circumstances from which constructive knowledge of such answers could be imputed to the plaintiffs at the time the application was signed and delivered to the agent or at any other time before they examined the policy and the application after the death of the insured in December 1957. That the application was

attached to and made a part of the policy does not, of itself, in the circumstances shown by the evidence, constitute either actual or constructive knowledge upon the part of either plaintiff of the statements in the application. The presence of the application as a part of the policy was merely an evidentiary fact to be considered by the jury, as it did, in determining whether the plaintiffs did, or did not, know the contents of the application.

In numerous cases this Court has adhered to the foregoing general rule.

In the early case of *McCall v. Phoenix Mutual Life Insurance Company*, 9 W. Va. 237, 27 Am. Rep. 558, this Court held in point 1 of the syllabus that ''A life insurance company is chargeable with knowledge of all of the facts stated by the applicant for insurance to the agent, as to the time of his birth, and he having truly stated to the agent the time of his birth, cannot be held to have made a misstatement towards the insurer, although the written application as drawn up by the agent, does not correspond with the verbal statement.'' In the opinion this Court said: ''An insurance agent, acting within the scope of his authority, binds his principal in making the survey and filling up the application; and if the applicant truly represents the facts, and, by the fault or negligence of the agent, the application contains a material misstatement, the company are estopped to take advantage of it. Flanders on Fire Insurance, 180-181; *Simmons v. Insurance Company*, 8 W. Va. 474, and cases there cited; * * *.''

In *Schwarzbach v. Ohio Valley Protective Union*, 25 W. Va. 622, 52 Am. Rep. 227, this Court held in point 12 of the syllabus that ''If an agent of an insurance company fills up the answers of the insured in a printed form of application furnished to the agent by the insurance company and procures the insured to sign such application, and in this application the agent has filled up an answer to a question, which he never propounded to the insured, and the insured trusting to this agent never read the application, and did not

know, that it showed any such question to have been put or answered, though he may have had an opportunity of reading the application either before or after he signed it, yet if such answer to such question so inserted in the application without the knowledge of the insured be false, it cannot operate as a forfeiture of the policy, as the making of such answer under these circumstances will not be regarded as the answer of the insured but as the act of the insurance company by its agent." The opinion in that case also contains these statements:

"* * * . So that under this system adopted now, it is believed, by all or nearly all life insurance companies, their agents to procure applications have a direct pecuniary interest and generally a large one to procure applications, on which the insurance company will issue policies; and in order to do so these agents frequently take the preparations of such applications into their own hands and procure the signature of the insured, who trusting to the agent has not read the application.

"It has been insisted, and formerly it was generally held, that under such circumstances the insured or assured should be bound by the written application signed by the insured, unless some device was resorted to for the purpose of preventing the insured reading the application which he signed. And on general principles, which are applied to ordinary business transactions, this would seem to be right and the insured or assured ought to be bound. But to apply these principles in their full force to the system, which is now almost universally adopted by companies to obtain policies of insurance both for life and against fire, would be a snare and delusion leading, as it has done in numerous cases, to the grossest frauds, of which insurance companies receive the benefits; and the parties supposing themselves insured are the victims.

"The modern and better opinion is, that where this course has been pursued by the agent to obtain policies of an insurance company, the description of the risk

or the facts set out in the application, though nominally proceeding from the insured, must be regarded by the court as proceeding from the insurers. * * * the weight of the modern authorities as well as reason in my judgment leads to the conclusion, that, where an application for a policy, which is filled up by an agent of an insurance company and signed by the insured on the faith, that it has been properly filled up, who has not read the application, though he had an opportunity to do so, if none of the false answers were given by him but were inserted by the agent of the insurance company either fraudulently or by mistake, where the mistake was not the result of anything said or done by the insured, the insured or assured is not bound by such false answers inserted in the application, but these answers should be regarded as the act of the insurance company by its agent and not the act of the insured. * * *.''

To the same effect are the decisions of this Court in the fire insurance cases of *Deitz v. Providence Washington Insurance Company,* 31 W. Va. 851, 8 S. E. 616, and *Coles v. Jefferson Insurance Company,* 41 W. Va. 261, 23 S. E. 732. See also *Medley v. German Alliance Insurance Company,* 55 W. Va. 342, 47 S. E. 101, 2 Ann. Cas. 99; *Plumley v. Superior Fire Insurance Company,* 122 W. Va. 333, 9 S. E. 2d 229. In the *Coles* case this Court held in point 5 of the syllabus that ''If the facts regarding the risk are correctly stated to the agent, but erroneously inserted by him in the application, the company is chargeable with his error or mistake.''

In *Parker v. North American Accident Insurance Company,* 79 W. Va. 576, 92 S. E. 88, L.R.A. 1917D, 1174, an action involving a policy of accident insurance, this Court held in point 1 of the syllabus that ''An accident insurance company is estopped to deny that a party insured by it was placed in the wrong classification, when such classification was made by its agent upon full and truthful information given such agent as to the employment and occupation of the assured.''

In *Shinn v. West Virginia Insurance Company*, 104 W. Va. 353, 140 S. E. 61, the application which contained a misstatement as to the value of the building, was signed by the insured. He made truthful answers to the questions asked by the agent but the agent inserted the false statements in the application without the knowledge of the insured. In point 2 of the syllabus this Court said: "In an action on a fire insurance policy, parol evidence is competent to prove that the agent filled out the application, and that the facts were fully and correctly stated to him, but that he without the knowledge of the insured misstated them in the application, although the insured signed the application." Decisions of appellate courts in other jurisdictions show that there is a conflict of authority concerning the principle stated in the syllabus just quoted, particularly in instances in which the application is attached to and made a part of the policy when the policy is delivered. See *Gillan v. Equitable Life Assurance Society*, 143 Neb. 647, 10 N. W. (2d) 693, 148 A.L.R. 496; Annotation II and Annotation IV, 148 A.L.R. 509, 514; Annotation II and Annotation IV, 117 A.L.R. 792; Annotation IV, 81 A.L.R. 867.

In *Bays v. Farmers' Mutual Fire Association of West Virginia*, 114 W. Va. 164, 171 S. E. 253, a fire insurance case, the application, to which the name of the applicant was affixed by the insurer and which was attached to the policy, contained a material misdescription of the building insured. The applicant had given correct information to the agent but the agent inserted erroneous information in the application. In the syllabus in that case this Court said: "If the facts regarding the risk are correctly stated to the agent of an insurance company, but erroneously inserted by him in the application, the company is chargeable with his error or mistake, whether the application is attached to the policy as a part thereof or not." The opinion contains this language: "Plaintiff's failure to read the paper attached to the policy and to discover therein the misdescription of the barn does not

564

militate against her because she had a right to assume that the agent of the defendant would not through carelessness or otherwise misstate the facts which had been given to him. An assured may not ordinarily plead ignorance of a provision of his insurance policy, but such is not the situation at bar. Ignorance of a provision of one's policy is a very different thing from ignorance of the fact that the company's agent has misstated the facts furnished him by the assured. The assured is not called upon to make examination to ascertain whether the agent of the insurance company has faithfully discharged his duty. The assured need not anticipate fraud or mistake on the part of the agent. *Williams v. Fire Ins. Co.*, (Ore.) 251 Pac. 258.''

The decisions of this Court in *Lewis v. State Automobile Mutual Insurance Company*, 115 W. Va. 405, 177 S. E. 449, and *Kincaid v. The Equitable Life Assurance Society of the United States*, 116 W. Va. 672, 183 S. E. 40, are in harmony with the principle enunciated in the *Bays* case which is cited with approval in the opinion in each of those cases, and recognize and apply the general rule stated in Annotation II, 81 A.L.R. 835.

The syllabus in the *Lewis* case is: ''Where facts regarding a risk are correctly stated to the agent of an insurance company in an oral application for a policy, and the company makes erroneous insertion of such facts in the warranty in the policy, upon which the same is issued, the company is estopped to assert their falsity as a defense to the policy, in the absence of knowledge of such erroneous insertion on behalf of the insured.'' The opinion in that case contains these pertinent statements:

''Although it seems to be very generally accepted that the insured cannot escape the effect of the conditions of a policy on the ground of ignorance, due to failure to read his policy, it being his duty to examine it, a number of courts hold that the insured is not necessarily estopped, by receiving and retaining the

policy, from setting up a variance between the agreement and the written contract. *McMaster v. N. Y. Life Ins. Co.*, 183 U. S. 25, 46 L. Ed. 64; *McElroy v. British American Assur. Co.*, 94 Fed. 990; *Rake & Son v. Century Fire Ins. Co.*, 148 Iowa 170, 125 N. W. 207; *Dryer v. Security Fire Ins. Co.*, (Iowa) 82 N. W. 494; *Pfiester v. Missouri State Life Ins. Co.*, 85 Kan. 97, 116 P. 245; *Kister v. Lebanon Mut. Ins. Co.*, 128 Pa. 553, 18 A. 447. The foregoing cases are based on the theory that an applicant for insurance is entitled to assume, in the absence of evidence, that the agent has prepared his application according to the agreement made between them, and that the insurer has written the policy in accordance to the application, and is not chargeable with negligence for failure to examine such instruments to discover errors and omissions.

"To permit an insurer to hide behind an express warranty in the contract as to a certain pertinent fact regarding the property insured, would virtually defeat the rule applied in the *Bays* case, wherein we held that the insured had a right to presume that the agent made proper entries in the application, although the policy provided that: 'If any false statements are made in said application this policy shall be void.' According to the evidence the insured had no knowledge of the agent's mistake or fraud until after the car had been stolen."

In the *Kincaid* case, in which judgment in favor of the insured was affirmed, this Court said in the opinion that the plaintiff "Having imparted correct information to the representatives of defendant, the plaintiff (in the absence of restrictive covenants) had the right to assume that his application, prepared by one representative (the examiner) and approved by the other two representatives (the soliciting agents), would contain that information. Their failure to have the application do so, must be taken as the failure of the defendant itself, and, accordingly, constitutes no defense to this action. *Bays v. Association*, 114 W. Va. 164, 166-7, 171 S. E. 253."

566

The rule enunciated in the syllabus in *Bays v. Farmer's Mutual Fire Association of West Virginia,* 114 W. Va. 164, 171 S. E. 253, applies to and controls the decisive question in this case and its application to the facts established by the evidence requires affirmance of the judgment in favor of the plaintiffs. In view of the conclusion reached with respect to the action of the agent in inserting incorrect answers in the application without knowledge of their contents by the plaintiffs, it is unnecessary to discuss or consider the action of the circuit court in giving and refusing the instructions of which the defendant complains except to say that such action did not constitute error prejudicial to the defendant.

The judgment of the Circuit Court of Calhoun County is affirmed.

*Affirmed.*