# CHARLESTON.

H. E. MARSHALL v. LOCOMOTIVE ENGINEERS MUTUAL LIFE AND ACCIDENT INSURANCE ASSOCIATION.

Submitted October 10, 1916.   Decided October 31, 1916.

1. INSURANCE—*Fraternal Insurance—Contract.*

In a certificate of membership and policy of life insurance issued by a fraternal, beneficial association, where the basis of the contract of insurance between the association and the insured, is the application signed by the insured, the policy issued thereon, and the by-laws of the association, such application, policy, and by-laws will be considered in construing the contract.   (p. 123)

2. SAME—*Fraternal Insurance—Fraud—Policy.*

Where it is provided in the by-laws of the association that "if any fraudulent or untrue statements were made concerning the bodily health or condition of the insured at the time the application was written, or if any material facts which should have been stated or given were suppressed or withheld, by the applicant or examining physician, then and in every case the certificate issued thereon shall be null and void and all obligations of this Association to the insured, his beneficiary or beneficiaries shall cease," and the insured in his application consents and agrees that "any untrue or fraudulent statement made herein or to the medical examiner, or any concealment of facts by me in this application * * * shall forfeit the rights of myself and my beneficiaries

to all benefits and privileges therein.    *   *   *   This application
shall form the basis of the contract between the association and the
insured,'' and the insured in his application, or in his statement to
such medical examiner, makes a statement which constitutes a
fraud either absolute or legal, he will forfeit the policy.   (p. 123).

3.   SAME—*Fraternal Insurance Policies—Construction.*

If the answers of the insured to the questions propounded to
him in the application, which are made part of the policy, are by
the policy waranted to be true, and if any of the answers are
false in fact, the policy is thereby forfeited, though the answers
were made in perfect good faith.   (p. 123).

4.   SAME—*Fraternal Insurance Policies.*

Though the policy be construed as not warranting the truth of
the answers of the insured, yet if these answers to specific ques-
tions are misrepresentations, the policy will be avoided, whether
the court or jury regard the answers as material or not; for the
parties by putting and answering such questions have declared
that they regard them as material.   (p. 130).

5.   SAME—*Fraternal   Insurance—Fraud—"Actual   Fraud"—"Legal
Fraud."*

A false answer to a question, in order to be such a misrepresen-
tation as will forfeit a policy, must be fraudulently false, that is,.
in making the answer, the insured must be guilty of actual fraud
or legal fraud.   By actual fraud is meant an intent to deceive;
but legal fraud may exist where there is no intention to deceive, as
where the insured in his answer makes a statement which from its
nature the insurer must necessarily regard as made on the personal
knowledge of the insured, which statement is false; in such case
the insured is guilty of a legal fraud, which will forfeit the policy,
though the false statement was made without any intent to deceive
but was the result of carelessness or forgetfulness.   (p. 130).

6.   SAME—*Fraternal   Insurance—Applications—Misrepresentation.*

But if the answer in the application for insurance is such as
must have been made, not on the personal knowledge of the appli-
cant but upon his best judgment and belief, and it be untrue, it
will not forfeit the policy issued thereon, if the answer was made
in perfect good faith, the applicant believing it to be true.
(p. 130).

(POFFENBARGER, JUDGE, dissenting).

Error to Circuit Court, Mercer County.

Action by H. E. Marshall against the Locomotive Engin-
eers' Mutual Life & Accident Insurance Association.   There
was a judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*French & Easley,* for plaintiff in error.

*John S. Draper* and *Russell S. Ritz,* for defendant in error.

MASON, JUDGE:

This is an action of assumpsit, instituted in the circuit court of Mercer County, for the recovery of benefits claimed by the plaintiff, on three membership certificates in the Locomotive Engineers Mutual Life & Accident Insurance Association, on account of the loss of his right eye. The defendant association is a fraternal, beneficial association, with its membership confined to the Brotherhood of Locomotive Engineers. On January 1, 1908, the plaintiff was admitted to membership in the association. The certificate of membership, under the constitution and by-laws of the association, insured the plaintiff in the sum of $1500.00, against the loss of "a hand, at or above the wrist joint, a foot, at or above the ankle joint, or sustaining the total and permanent loss of sight of one or both eyes." Under the by-laws of the association, a member of the Brotherhood of Locomotive Engineers, under certain age and passing the necessary examination is permitted to take out as many as three of these certificates, all certificates being issued for $1500.00 insurance, as above stated. Plaintiff's first certificate is effective January 1, 1908. In 1911 he made application to the defendant for two additional certificates of membership. Upon this application two additional certificates were issued to him, effective May 28, 1911. This gave plaintiff the full amount of insurance which he could take out in the association, amounting to $4500.00.

By a provision of the by-laws of the association, "any member of this Association losing, by amputation, a hand at or above the wrist joint, foot at or above the ankle joint, or sustaining the total and permanent loss of sight in one or both eyes, shall receive the full amount of his insurance." The plaintiff alleges in his declaration that on the ......day of January, 1912, he became totally blind in one eye, and that he has performed, fulfilled, observed, and complied with all the conditions, provisions and stipulations of said policies, and claims that by reason thereof he is entitled to recover

from defendant the full amount of said three policies, to-wit, $4500.00.

A person desiring to become a member of the association is required to file with the company an application pledging himself to be governed by and support all the rules and by-laws governing the same; the application forms the basis of the contract between the society and the insured. Section 22 of the constitution and by-laws provided that, "The regular application blank prepared and issued by this Association, furnished to, and signed by the applicant, the policy issued thereon and the by-laws in force at the time, or as amended from time to time, shall form the basis of the contract between this Association and the insured." There is no formal policy. What is called the policy in these proceedings is the certificate of membership. There is in the application made by the insured this language. "I do hereby consent and agree that any untrue or fraudulent statements made herein, or to the Medical Examiner, or any concealment of facts by me in this application * * * or failure to comply with the laws of the Association now in force, or adopted in the future, shall forfeit the rights of myself and my Beneficiaries, to all benefits and privileges therein." Section 22 of the constitution and by-laws further provides: "And if any fraudulent or untrue statements were made concerning the bodily health or condition of the insured at the time the application was written, or if any material facts which should have been stated or given were suppressed or withheld, by the applicant or examining physician, then and in every such case the certificate issued thereon shall be null and void and all obligations of the Association to the insured, his beneficiary or beneficiaries shall cease."

Section 19 of the constitution and by-laws of the association provides: "No applicant for membership in this association shall be admitted unless declared by a reputable physician, elected by the insured members of the division, after a full examination, as indicated by the application form, to be in good health and free from any disease or disability that will be likely to shorten his life or prevent him from following

his vocation of a locomotive engineer, and has two good eyes, both hands and both feet, unless applicant will sign a waiver releasing the Association from any liability for such injuries already sustained, and he must be under fifty (50) years of age.'' In each of the medical examinations which is a part of such application, the following question was asked and answered: Question. ''Were your eyes ever affected by ·Cataract, Inflamation, or any other disease?'' Answer. ''No.'' In the physician's certificate made in conformity with section 19, the physician in answer to the question, ''Has the applicant two good eyes, both hands, and both feet?'', answered, ''Yes.''

The defendant denies liability on the ground of fraudulent representations of the plaintiff, which will be referred to later. There was a plea of non-assumpsit, and statements of defense were filed, as above indicated. Trial was had by a jury, verdict for $4972.50, judgment on the verdict; and the defendant comes to this court on writ of error.

No substantial defense to the plaintiff's demand on the first policy was offered. Defendant denies liability on the two policies of May 28, 1911, on the grounds as alleged that when each of said policies was issued, the plaintiff represented that he had two good eyes, which representation it is alleged was false. Defendant alleges that the plaintiff did not have two good eyes at that time; that the defendant relied on the representation of plaintiff, and had it known that plaintiff did not have two good eyes at the time, it would not have issued the policies.

It is conceded that the plaintiff was blind in one eye a few months after the last policies were issued. The plaintiff swears that at the time the policies were issued he had no trouble with his eyes; that they began to fail a few months afterwards. Defendant offered evidence to show that plaintiff was blind in the right eye at the time and several months before the last policies were issued.

Plaintiff proceeds on the theory that if there was any defect in his eyes at the time or prior to the time of the issuing of the last named policies, he did not know it, and that the answer to the question referred to was not a warranty, but

only a representation,—an opinion. It is conceded that if the answer were a warranty and false, it would preclude a recovery; but plaintiff insists that the answer being only a representation, not amounting to a warranty, it is not sufficient to bar a recovery, unless the representation was made with knowledge of its falsity, and was made with a design and purpose to fraudulently make an untrue answer. The defendant's contention is that the plaintiff in his application for the certificates, at least the two last certificates, made false and fraudulent answers to this question propounded to him by the medical examiner: Question. "Were your eyes ever affected by Cataract, Inflamation, or any other disease?" Answer. "No."

The appellant insists that the plaintiff, in his application for the last two certificates of insurance, made false and fraudulent answers to the question propounded to him by Doctor Scott, the medical examiner; that the question asked was specific and called for information peculiarly within the knowledge of the applicant, and required specific and truthful answers, and that from their nature they were of great importance, and that the answers were such that the insurer, the defendant, must necessarily rely on them. It is further contended by appellant "that the applicant here, was seeking to secure a policy of insurance, protecting him against the loss of sight in one or both eyes, and that, therefore, the questions asked in the application, were of very great importance and in order to bind the defendant, must have been truthfully answered by the applicant."

This brings us to the consideration of the most important question in this case—the construction of that portion of the policy relating to the statement made in plaintiff's application and to the answer to the question propounded to him by the medical examiner. Was the answer to that question and the statement warranted by the applicant to be absolutely true and binding the applicant, or should they be considered as mere representations or opinions? If by this contract of insurance the applicant warranted his answer and statement to be true in all respects, and they were untrue, the insured can not recover, for the reason that the parties must

be considered as having thereby, for themselves, declared
that any question and answer should be regarded as material,
and an untrue answer would avoid the policy, although the
answer may have been made in perfect good faith. *Schwarz-
bach* v. *Ohio Valley Protective Union,* 25 W. Va. 622, sylla-
bus point 7.    See, also, *Aetna Insur. Co.* v. *France et al.,*
·94 U. S. 561; *Jeffreys* v. *Life Insur.* Co., 22 Wall. 47; *Foot* v.
*Aetna Life Ins. Co.,* 61 N. Y. 571; *Powers et al.* v. *Northeast
Mut. Life Association,* 50 Vt. 630; *Co-operative Association*
v. *Leflor,* 53 Miss. 2, syl. 4 & 5.

It is said in *Schwarzbach* v. *Protective Union, supra,* that
in determining whether the answers by the assured are war-
ranties or representations, courts lean in favor of construing
the policy as making them representations rather than coven-
ants.    See *Campbell* v. *New England Mutual Life Insurance
Co.,* 98 Mass. 381.

From a careful examination of this policy we conclude that
said statement and answer to the question in the application
which form parts of the contract of insurance were represen-
tations and not a warranty.    The parties to the contract rec-
ognized this construction by the applicant consenting and
agreeing that "any untrue or fraudulent statement made
herein or to the medical examiner, or any concealment of
facts by me in this application    *    *    *    shall forfeit the
right of myself and my beneficiaries to all benefits and priv-
ileges therein."    The defendant does not claim by way of
defense that the answer or statement constitutes a warranty,
but defends on the theory that they were representations.

Decisions are not uniform in the different states of this
country as to what constitutes a misrepresentation in such
applications, which will avoid the policy of insurance.    It
would make this opinion tiresome and tedious and serve no
practical purpose to present the different theories and de-
cisions.    The position of this court on the subject is expressed
in the case of *Schwarzbach* v. *Protective Union, supra,* points
8 and 9 of the syllabus holding that:    "Though the policy
be construed as not warranting the truth of the answers of
the insured, yet if these answers to specific questions are mis-
representations, the policy will be avoided; whether the court

or jury regard the answers as material or not; for the parties by putting and answering such questions have declared, that they regard them as material. But a false answer to a question, in order to be such a misrepresentation as will forfeit a policy, must be a fraudulent answer, that is, in making the answer the insured must be guilty of actual fraud or legal fraud. By actual fraud is meant an intention to deceive; but legal fraud may exist where there is no intention to deceive, as where the insured states in his answer, that he knows personally, that his answer is true, when it really is not true, or when the answer contains a statement which from its nature the insurers must necessarily regard as made on the personal knowledge of the insured, which statement is false, in both these cases the insured is guilty of a legal fraud, which will forfeit the policy, though the false statement was made without any intent to deceive but was the result of carelessness or forgetfulness.''

As stated in the above case, this court holds that the answer to a question, in order to be such a misrepresentation as will forfeit a policy, must be fraudulently false. By this is meant that the insured in making answer is guilty of actual fraud—an intent to deceive,—or of legal fraud, that is, where there may be no intent to deceive, but where the answer is untrue, and the statement from its nature must necessarily be taken by the insurer as made on the personal knowledge of the insured, and the insurer is thus induced to rely and act upon this untrue statement. In such case, whether the fraud be actual or only legal, the effect is the same upon the insurer and will avoid a policy; but if there be no fraud either actual or legal in the misrepresentation of a fact, such representation will not avoid the policy. The insurer has no grounds for complaint unless he has been deceived and misled by some act of the insured into doing what he would not have done had not such representations been made. The insurer could protect itself by requiring a warranty.

Now let us apply the law to the facts proven in this case. The defense, as we have seen, is that the answer contained in plaintiff's application was untrue, and that this fact was fraudulently concealed from the medical examiner, and in

the application, and that had such fact been known to the insurer at the time the policy was issued, such fact would have caused the defendant to have declined and refused to issue the same.

Was this statement and answer made in the application and to the medical examiner, if false, such as to constitute fraud, either actual or legal? The plaintiff was applying for a policy in defendant company for indemnity, among other things, for the loss of his eyes. Before the defendant would issue the policy it was proper that it should know whether the applicant was then suffering from any disease of the eye, or whether his eyes had in any way been affected by disease. With a view of ascertaining this fact, the question was asked the plaintiff, who of all other persons would most likely know, "Were your eyes ever affected by cataract, inflamation, or any other disease?" This was a specific question which called for a truthful answer. The insurer did not know what the fact was, but presumably the applicant did know. From the nature of the statement the insurance association would necessarily regard it as made on the personal knowledge of the applicant and rely upon its truthfulness. To this question the applicant gave an unqualified and direct answer. We think it was such an answer as the defendant had the right to rely and act upon. This rule is specially applicable in this case, as it appears that the defect in the eye, if any, could not be detected by causual observation. If the answer was untrue, whether the plaintiff intended to deceive the defendant or not, or to conceal the fact, it forfeits the right of the plaintiff to recover. Whether or not the statement or answer contained in the plaintiff's application and repeated in substance to the medical examiner is true, is a question of fact to be determined by the jury, under the pleadings in this case.

The contention of the plaintiff is that the only proper issue to be submitted to the jury is whether or not the applicant honestly believed he was making a truthful answer as to the condition of his eyes, at the time he applied for the two certificates in question; not as to whether, in fact, his eyes were or had been diseased, but whether the plaintiff had actual

knowledge of any such condition, and whether he answered in good faith, honestly believing that his eyes were not at that time and had not been affected by disease. Upon this theory the plaintiff may have been totally blind in an eye when the application was made, and be denied by the answer, yet if the applicant did not know this and made an answer in good faith, it does not avoid the policy. This proposition so broadly stated, as we have seen is not the law of this state. But the circuit court in the trial of this action adopted the theory of the plaintiff and so instructed the jury, submitting knowledge and good faith in answering the question to the jury as the test of defendant's liability.

The two theories of the parties were presented to the court in two contradictory instructions asked for. The plaintiff's theory is embraced in his instruction No. 3, as follows: "The court instructs the jury that if the defendant relies on the alleged false or fraudulent statements of the plaintiff in his last application to avoid the payment of the two policies issued to him in May, 1911, that the burden of proof is on the defendant to prove by the preponderance of the evidence that the plaintiff was blind in his right eye at the time of making said application, or that the plaintiff knew and falsely and fraudulently concealed from the defendant that he had previous to said application had cataract, inflamation or other disease which affected his eyes, and if they believe from the evidence that the defendant had failed to bear this burden, unless the same appears from the plaintiff's evidence, they should find for the plaintiff the full amount of the said policies issued in May, 1911, with interest from November, 1913."

The defendant's theory is stated in its instruction No. 6, as follows: "The court instructs the jury that the submission by the defendant to the plaintiff of the question 'Were your eyes ever affected by cataract, inflamation or any other disease?' must be regarded as being submitted on the personal knowledge of the plaintiff and if you further believe that the answer made by the plaintiff to said question was false, and that his eyes were then diseased or had any time previously been affected by disease, then you will find for the defendant, even though you may further believe that said answer was

made without any intent to deceive, but was the result of carelessness or forgetfulness on the part of the plaintiff.''

The plaintiff's said instruction No. 3 was given to the jury, and defendant's instruction No. 6 was refused. The plaintiff's instruction No. 3 told the jury that the burden is on the defendant to prove by a preponderance of the evidence either that the plaintiff was blind in his right eye at the time of making the application, or that he knew and falsely and fraudulently concealed from the defendant that he had previous to said application had cataract, inflamation or other disease which affected his eyes. We can not approve this instruction. As we have seen, legal fraud may be committed without actual knowledge or any intent to deceive. If the answer made by the plaintiff to the question was untrue, it is not material whether he knew it or not, the information sought being such as the defendant must have regarded as within the personal knowledge of the plaintiff, and the insurer accepted and acted upon it as true.

Plaintiff's instruction No. 1 is wrong for the same reason that his instruction No. 3 is erroneous. Neither should have been given. Defendant's said instruction No. 6 should have been given in substantially that form. This instruction refers to a diseased condition of the eyes existing at the time the application was made, and also whether the eyes had been affected by previous disease—not alone whether he had ever had any disease of the eyes, but whether his eyes had ever been affected by disease. The question refers to the condition of the eyes at the time, and the instruction should make it plain that is what was meant by the question.

The defendant asked for ten instructions; five of them were given, and two were given in a modified form; three of defendant's instructions, namely Nos. 5, 6 and 10, were refused. Defendant's instruction No. 5 refused, was in substance the same as instruction No. 6, applying the law to a different phase of the case, and we perceive no objection to it. Instruction No. 10 may be misleading, as it says to the jury "a misrepresentation or false statement made in his application respecting a material fact avoids the policy issued thereon whether the misrepresentation was made innocently or designedly.'' This statement is inaccurate and

might mislead the jury notwithstanding the latter portion of the instruction applies to the question propounded to the applicant in this case. The false statement or misrepresentation to avoid the policy must be such as from its nature, the person to whom it was made must necessarily regard as made on the personal knowledge of the person making it. The modification of defendant's instructions Nos. 3 and 4, made them objectionable.

Several exceptions were taken by defendant on the trial, and some of them are insisted on here:

1. The plaintiff, while introducing his testimony in rebuttal, offered to introduce portions of his claim of proof of loss of his eye-sight, and was permitted to do so, over the objection of the defendant. We can see no proper use which could be made of such proof. It had already been stipulated by the parties that the plaintiff filed his preliminary claim for loss of sight with the associatiion as required by the constitution and by-laws. While we would not reverse for this cause alone, the proof was objectionable.

2. W. E. Futch, president of the association, who signed the policies, was examined as a witness and asked this question: "Please state if, under the rules of your company, existing at the time these polices were issued, if you would have issued these policies had you known that the plaintiff had had cataract, inflamation, or any other disease, or didn't have two good eyes?" If permitted to answer, he would have answered: "We would not have issued them." The answer was made in the presence of the jury, but the jury were instructed by the court not to consider it. Defendant insists that this was error. We do not think so. It does not matter whether this president would or would not have issued the policies under such circumstances. The proper inquiry is, would it be proper to issue the policies under such circumstances?, and that is a question of law for the court.

3. Counsel for the appellant say that the court erred in permitting counsel for the plaintiff repeatedly to propound to witnesses questions which were objectionable and could not be properly answered. This court could not take notice of occurrences of this kind taking place at the trial, unless it

appeared that the verdict of the jury has been influenced thereby.

The judgment will be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*

POFFENBARGER, JUDGE, *(dissenting):*

I cannot agree that the question dealt with by plaintiff's instruction No. 3 and defendant's instruction No. 6 called for an answer based upon the personal knowledge of the applicant. A man may have a diseased or an affected eye and not know it, just as he may, without knowledge of the fact, have a disease of any other part of his body. Trifling and temporary affections do not rise, in law, to the dignity of diseases. Therefore, mere eye trouble does not necessarily import eye disease. One effort in this case was to fix knowledge on the plaintiff by proof that his eye had been treated. He admits that, but says slight treatment apparently eradicated the trouble.

Now, there is no middle ground for the instructions. The question called for an answer founded on either personal knowledge or the applicant's opinion. My associates say it must have been the former, because a man cannot be ignorant of a disease of the eye, if he has one, or of an affection of his eye, by disease, if it is so affected. They make the question one of law, founding their conclusion on judicial knowledge. I am unable to say that. I think it is matter of common knowledge, that a man may have a diseased or affected eye and, at the same time, be ignorant of the fact. I think the plaintiff's instruction No. 3 was correct and defendant's instruction No. 6 wrong. It seems to me, also, that the latter, when modified agreeably to the court's suggestion, will be substantially the same as the former.

Moreover, I do not think the theory of legal fraud should apply. The adjectives "untrue" and "fraudulent", used disjunctively, as they are, in the application, may be regarded as synonymous terms, and all ambiguities are to be resolved in favor of the insured. *Schwarzbach* v. *O. V. Pro. Un.*, 25 W. Va. 622.