ROBERT COOK

*v.*

FARMERS MUTUAL FIRE ASSOCIATION

OF WEST VIRGINIA, *A Corporation*

(No. 10600)

Submitted January 19, 1954.    Decided April 2, 1954.

*Clay D. Amos,* for plaintiff in error.

*R. D. Bailey, Bailey, Worrell & Bailey,* for defendant in error.

Lovins, Judge:

This is an action in assumpsit brought by Robert Cook, on an insurance policy issued by Farmers' Mutual Fire Association of West Virginia, a Corporation. The plaintiff and defendant will be hereinafter so designated. A jury trial resulted in a verdict and judgment against the defendant for the sum of $3800.00, and a writ of error to such judgment was awarded the defendant upon its application.

The policy was issued on the 20th day of May, 1951, pursuant to an undated written application filed by the plaintiff. The application discloses that the total amount of insurance applied for was $7550.00. $4000.00 of that amount was placed on the dwelling house and $1000.00 on the household goods. The residue of the policy covered the outbuildings, livestock and farming implements. We are only concerned here with the insurance covering the dwelling house and household goods.

The plaintiff stated in such application that he was the sole and undisputed owner of the property; that there was no other insurance on the property; that there was an encumbrance thereon. The application further stated that each and every statement contained in the application was made a warranty and that any false or inaccurate statement made in the application would void any policy of insurance issued on such application; that any claim because of such insurance would be limited to two-thirds of the actual value of the property at the time of such loss. The estimated value of the dwelling house and the household goods was $8000.00. The plaintiff agreed that he would be governed by the constitution and by-laws and policy contracts of the defendant. Pursuant to the application, the policy was issued.

The policy states that it is based and issued upon the representations contained in the plaintiff's written application which was attached to the policy, and that the statements contained in such application were made warranties and a part of the policy. It was further provided

in the policy that if any false statements were made or contained in the application, the policy would be void.

"This policy is made and accepted subject to the foregoing stipulations and conditions and to the stipulations and conditions printed on the back hereof which are hereby made a part of this policy, together with such other provisions, stipulations and conditions as may be indorsed hereon or added hereto as herein provided; and no one shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provisions or conditions be held to be waived unless such waiver shall be in writing added hereto, * * * nor shall any privilege or permission affecting the insurance hereunder exist or be claimed by the assured unless granted herein or by rider added hereto."

The policy further provided that it should be void if there is any concealed misrepresentation of any material facts or circumstances concerning the insurance or the subject thereof. A part of the policy provides in part as follows, with respect to ownership and other insurance: "This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership; or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple; * * * ". It was further provided in the policy as follows: "Unless otherwise provided by agreement in writing added hereto this Association shall not be liable for loss or damage occurring. (a) while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; * * * ". The policy further provided that: "No one shall have power to waive any provision of conditions of the policy, except such as by the terms of this policy may be the subject of agreement * * * ", and that no provision should be held to be waived unless the waiver should be in writing added to the policy.

A No. 1-Mortgagee Clause was attached to the policy

which provided, among other things, that loss or damage, if any, should be payable to The Castle Rock Bank of Pineville, West Virginia, as the first mortgagee. Other stipulations, as provided for in the standard form, were contained in the No. 1-Mortgagee Clause: "Whenever this company shall pay the mortgagee * * * any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, * * * and shall thereupon receive a full assignment and transfer of the mortgage and all such other securities; but no subrogation shall impair the right of the mortgagee * * * to recover the full amount of their claim."

Section 1 of the By-Laws of the defendant, provides that the insurance on any buildings should not exceed two-thirds of their true value. Numerous other provisions contained in the By-Laws are not pertinent.

On the last page of the policy certain printed matter appears, the substance of which is that the holder of the policy is cautioned that written consent of the insurer must be obtained and endorsed on the policy, or added to it. Among other things mentioned under said caution is the following: "4. If deed is not in your name." "10. If you place additional insurance in another company."

A fire occurred on October 1, 1951. The dwelling house and household goods were destroyed. The house seems to have been located on a 213 acre tract of land, which was owned by the plaintiff and his wife, Bertha Cook. The Castle Rock Bank of Pineville had a lien against the land and improvements at the time of the fire, in the amount of $1200.00, which was covered by the No. 1-Mortgagee Clause, as stated above. The defendant paid the lien debt on the 10th day of December, 1951, and took an assignment of the note held by the bank; without recourse.

The plaintiff filed a declaration, and later an amended

declaration. The amended declaration named the plaintiff and his wife as plaintiffs. In the amended declaration, the plaintiffs claimed the full amount of the insurance ($5000.00), less $1200.00 paid to The Castle Rock Bank. A demurrer to the amended declaration was filed by the defendant to any claim of Bertha Cook, wife of the plaintiff. This demurrer was sustained as to Bertha Cook. The defendant, without waiving its rights on the demurrer, filed its plea of general issue, specifications of defense and a special plea. The specifications of defense set forth as grounds of defense to this action, the following: That the interest of the plaintiff was other than unconditional and sole ownership, and that the building covered by the insurance was situated on ground not owned by the plaintiff in fee simple; that the plaintiff had effectuated other insurance on the property covered by the policy; that no waiver of that provision inhibiting other insurance had been made or attached to the policy by the defendant; and that the plaintiff estimated the value of the dwelling house in his application to be $6000.00, and that in his declaration filed in this action, he alleged that the house was worth at least $12,000.00.

Defendant pleaded the No. 1-Mortgagee Clause, by setting it forth verbatim. Defendant alleged that on account of such mortgagee clause it had paid to The Castle Rock Bank the sum of $1200.00, and had taken an assignment for such amount from the bank; that it now held the note evidencing the debt, that no part of said note had been paid; that the plaintiff now owed the defendant $1200.00, with interest from the 24th day of December, 1951, and prayed for judgment against the plaintiff for the amount of the note, with interest, together with costs.

The special plea No. 1, concerning the mortgagee clause and assignment of the note and non-payment thereof by the plaintiff, is substantially a plea of counterclaim.

After the demurrer was sustained as to Bertha Cook's rights, she was dismissed from the action and the declaration was further amended. By such amendment, Robert Cook was to be considered the sole plaintiff and the speci-

fications of defense, special plea and plea of general issue were made applicable to the declaration as so amended.

The plaintiff replied to the defendant's specifications of defense, in which he admitted that the land was owned jointly by the plaintiff and his wife; that the additional insurance was effected on the property, but that the defendant had been notified of such additional insurance, had made no objection to the other insurance and had not cancelled the policy, nor made any effort to do so, until after the destruction of the plaintiff's dwelling and household goods.

The plaintiff alleged that the statement as to the value of the property was immaterial, that the title of the property was vested in the plaintiff and his wife, and that he had an insurable interest in the insured property.

The replication further alleged as a defense, that the defendant, by making payment of the entire mortgagee debt, was estopped from making any defense as to the validity of the insurance policy, having discharged and recognized the indebtedness of the plaintiff to the mortgagee bank. The defendant demurred to the replication, setting forth as grounds for such demurrer, that the plaintiff admitted that he did not possess the sole ownership of the building and ground on which it was located; that the plaintiff admitted the existence of other insurance and attempted to show waiver, as to the other insurance, but that the waiver was not in writing or endorsed on the policy; that the statement of the value of the property is shown to be false by the replication and that it is governed by the provisions of the application signed by the plaintiff, and that the allegation of the replication with respect to insurable interest of plaintiff, is immaterial. The demurrer to the replication further states as a ground, that the No. 1-Mortgagee Clause was not vitiated nor affected by the alleged invalidity of the policy of the insured, and that the payment of the indebtedness of insured to the bank by the defendant does not constitute an estoppel. For further grounds, the demurrer to the replication states that the replication of the plain-

tiff fails to show any waiver of additional and other insurance contained in the policy.

The demurrer of the defendant to the replication of the plaintiff was overruled and the parties then went to trial. Upon the trial, the evidence is substantially as follows:

It is shown from the evidence, in fact it is admitted by the plaintiff that he and his wife, Bertha Cook, were joint owners of the land and buildings covered by the insurance policy. The plaintiff obtained other insurance covering the dwelling house and the personal property therein, in the sum of $5000.00. The record indicates that the additional insurance was placed in five other companies by an agent who had no connection with the defendant. The agent who wrote the last insurance policies sometime during the month of August, 1951, testified that a short time after he wrote such other insurance, though he was not "too positive", he intended to write a letter to the defendant, and that it was his impression he wrote such letter, addressed to the home office of the defendant, advising it of the other insurance placed on the property of the plaintiff. He testified that he went to the bank which held the lien on the plaintiff's property and obtained the policy which is the basis of this action, and secured the address of the defendant, and thereafter the letter was written, although he stated that he was unwilling to testify under oath that the letter was in fact written. The same witness stated he could not state the contents of the letter, but it was his impression that the letter advised the defendant of the amount of other insurance coverage on plaintiff's property. The secretary of the defendant testified that he received all of the mail at the home office of defendant, that he examined it and that such course of conduct on his part continued during the month of August, 1951, and up until the time the fire occurred. He further testified that he opened such mail and read it; that he did not receive any mail from the agent who effected the other insurance on the property of the plaintiff, and that he was positive no such letter was ever received or read by him, as secretary of the defendant.

The application for insurance hereinabove referred to shows that defendant is a farmers' mutual fire insurance company. Chapter 57, Acts of the Legislature, 1935, Regular Session, amends Article 5, Chapter 33 of the Code of West Virginia, 1931. Various provisions are found in that statute which are not material nor pertinent to the questions raised in this record. But Section 28 of that statute, which reads as follows, is applicable and pertinent: "Any such company organized or operating under the provisions of this article shall be exempt from all provisions of other insurance laws of this state, and no law hereafter passed shall apply to such companies unless such law shall expressly declare that it is applicable to farmers' mutual fire insurance companies, as contemplated by this article."

This being true, we do not apply the various statutes relating to standard fire insurance policies. The contractual provisions contained in the policy governs. See *Jackson v. Fire Ins. Co.*, 107 W. Va. 304, 148 S. E. 125.

There is a distinction between representations and warranties. The line of demarcation between a representation and a warranty is not clear, but in determining whether the provision of a policy is a warranty or representation, this Court favors the construction of a policy of insurance which treats statements as representations rather than warranties. Though such construction is adopted and applied, if the answers to specific questions are misrepresentations, the policy may be avoided, whether material or otherwise. *Schwarzbach v. Pro. Union*, 25 W. Va. 622. Similar holdings will be found in *Logan v. Assurance Society*, 57 W. Va. 384, 50 S. E. 529; *Marshall v. Insurance Ass'n*, 79 W. Va. 121, 90 S. E. 847. In *Myers v. Life Insurance Co.*, 83 W. Va. 390, 98 S. E. 424, it was held: "Warranties in such a policy of insurance constitute part of the contract and stipulate for the absolute truth of the statement made. They must be strictly complied with, else the policy may be avoided. Representations are not, strictly speaking, part of the insurance contract, but are collateral thereto. They are statements

made to the insurer before or at the time of making the contract, presenting the elements upon which the risk is either accepted or rejected." Pts. 2 & 3 syl. *Myers* v. *Life Ins. Co., supra.* If the policy and the provisions of the application taken together leave no room for any other construction, statements or declarations generally will not be construed to be warranties. *Myers* v. *Life Insurance Co., supra.*

In the instant case the policy provides: " * * * this insurance is based and issued upon the representations, contained in the assured's written application of even number herewith, a true copy of which written application is hereto attached, and each and every statement of which is hereby specially made a warranty and a part hereof, and it is agreed that if any false statements are made or contained in said application this policy shall be void." See *Shinn* v. *Ins. Co.,* 104 W. Va. 353, 140 S. E. 61.

The application contains, among other questions: "Is title to the land on which this property is situated in applicant's name? Yes." "Is applicant the sole and unconditional owner of the property to be insured? Yes." We treat those statements as warranties, being contained in the policy and a part of it, as well as in the application, likewise made a part of the policy. The statements as to the ownership of the property, being false, the policy was void. *Saltesz* v. *Woodmen,* 110 W. Va. 513, 159 S. E. 513. The statement as to the ownership of the land, being false, the policy was void. See *Kirk* v. *Insurance Co.,* 126 W. Va. 213, 27 S. E. 2d 596; *Blackwood* v. *Insurance Co.,* 124 W. Va. 353, 20 S. E. 2d 243; *U. & N. Insurance Co.* v. *Petty,* 21 Fla. 399; *Phenix Ins. Co.* v. *Hilliard,* (Fla.) 52 So. 799; *Scott* v. *Liverpool & London & Globe Ins. Co.* (S. C.) 86 S. E. 484; *Palmetto Fire Ins. Co.* v. *Fansler,* (Va.) 129 S. E. 727. 3, Joyce, The Law of Insurance, Second Edition, Section 2042, page 3418 is quoted as follows: "The insurance is also void where the owner of an undivided one-half interest in a building states in his written application for insurance that he is the sole and unconditional owner of the building, even though such applicant is

sincere in making such misstatement, as his co-owner has verbally promised to convey to him upon the payment of a certain sum." 14 Ruling Case Law, Insurance, §229; 45 C. J. S., Insurance, §526; 29 Am. Jur., Insurance, §614. See *Teter* v. *Fire Insurance Co.*, 74 W. Va. 344, 82 S. E. 40.

The conclusion is inescapable that the husband was not the sole and unconditional owner, and therefore, the policy was avoided by the falsity of the representations contained in the application, as well as the provisions of the policy itself.

It is provided in the policy: "This entire policy shall be void, unless otherwise provided by agreement in writing added hereto." No such agreement was added to the policy.

Another vital question is raised on the record relative to other insurance on the property. The plaintiff procured other insurance on the property as above stated. There is no written agreement waiving the provisions of the policy with reference to other insurance. Plaintiff now relies upon a letter which was allegedly written to the defendant by the agent who placed such other insurance. The agent stated that he was not positive that he had written and mailed the letter. Even if the letter had been written, a waiver by conduct would not have been sufficient to render the policy valid without a written agreement added to the policy, showing such waiver. Provisions similar to the one contained in this policy have been applied frequently by this Court. See *Oates* v. *Continental Ins. Co.*, 137 W. Va. 501, 72 S. E. 2d 886; *Heldreth* v. *Federal Land Bank*, 111 W. Va. 602, 163 S. E. 50.

Though we do not apply the standard policy law, as was done in the cases of *Oates* v. *Ins. Co., supra,* and *Heldreth* v. *Federal Land Bank, supra,* the language appearing in the policy of insurance above quoted does not leave the question open as to the validity of the insurance. Moreover, the agent who agreed with the plaintiff to write the defendant as to the existence of other insurance is not positive that he wrote the letter. Nor is there a written waiver of such condition. The policy was avoided

by the breach of the condition of the policy relative to other insurance, and there can be no recovery on it.

Another question relates to the right of the defendant to recover the amount paid by it to The Castle Rock Bank. The No. 1-Mortgagee Clause is a separate contract. The defendant, having paid the amount due The Castle Rock Bank, is entitled to be subrogated to the rights of that bank for the amount paid by it. *Heldreth* v. *Federal Land Bank, supra; Fire Association* v. *Ward,* 130 W. Va. 200, 42 S. E. 2d 713. See *B. & L. Asso.* v. *Fire Ins. Co.,* 105 W. Va. 147, 141 S. E. 634. The defendant was entitled to recover from the plaintiff the amount paid by it to The Castle Rock Bank.

From the foregoing, it follows that defendant's instruction number 1, should have been given. That instruction reads as follows: "The Court directs the jury to find for the Defendant in the amount of Twelve Hundred ($1200.00)." The objection to that instruction is not specific, as required by Rule 6 (e), Rules of Practice and Procedure for Trial Courts in the State of West Virginia. The trial court erred in refusing to give it.

The trial court likewise erred in overruling the motion to set aside the verdict. The plaintiff, not being the sole and unconditional owner of the building, and having effected other insurance, contrary to the provisions of the policy, the verdict of the jury should have been set aside on motion of the defendant and a new trial granted.

Other errors are assigned which have considerable merit, but we think the foregoing discussion disposes fully of this writ of error, and it is therefore unnecessary to discuss them.

We think this action should be remanded for a new trial under the eighth point of the syllabus of *Koblegard Co.* v. *Maxwell,* 127 W. Va. 630, 34 S. E. 2d 116. Such trial should be had in accordance with the principles enunciated in this opinion.

Accordingly, we reverse the judgment of the trial

court of Wyoming County, set aside the verdict, award the defendant a new trial and remand the case for that purpose.

*Reversed; verdict set aside;*
*new trial awarded defendant.*