EVERETTE WAITMAN CHRISTIAN

*v.*

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

(No. 11048)

Submitted September 22, 1959.  Decided November 10, 1959.

*Sanders, White & Daugherty, Ben B. White, Jr., George A. Daugherty, William H. Sanders,* for plaintiff in error.

No appearance, for defendant in error.

CALHOUN, JUDGE:

In this action in assumpsit, Everette Waitman Christian sued the State Farm Mutual Automobile Insurance Company in the Circuit Court of Wyoming County on a policy of insurance, covering a Mercury automobile. From a judgment for the plaintiff, the defendant prosecutes this writ of error.

The automobile in question was purchased by the plaintiff in November, 1956, from Welch Lincoln-Mercury Sales Agency of Welch, McDowell County, West Virginia. The unpaid balance on the purchase price, amounting to $2,600.00, was financed through Commercial Credit Corporation. Marvin King, who made the sale on behalf of Welch Lincoln-Mercury Sales Agency, called Margaret E. Foster, insurance agent of the defendant, by telephone at her place of business in Welch. As a result of the telephone conversation, the plaintiff called upon Mrs. Foster, who issued the insurance policy in question.

With reference to the loss, the plaintiff testified that about 11:30 a. m., on December 17, 1956, he was proceeding alone in his automobile on Big Cub Creek Road in Wyoming County, when, at a certain point on Coal Mountain, the right rear tire became flat; that he parked his automobile on the right side of the highway; that while he was in the process of changing tires, the "car crawled over the jack", and the automobile went over a steep and rocky hill or bank at the right of and below the

highway, resulting in practically a complete loss of the vehicle; that thereafter he walked about two miles to a beer tavern where he telephoned for a wrecker; that he returned promptly to the scene; and that in the meantime the jack had disappeared.

Mrs. Margaret E. Foster filled in the blanks on the application for insurance. One of the questions on the application was: "Has any insurer cancelled or refused to issue or renew automobile insurance to the applicant or any member of his household within the past three years?" This question was answered in the negative on the application, and the plaintiff signed the application with such answer appearing thereon. The plaintiff testified that he told Mrs. Foster "I had had insurance canceled", but that "she told me that she would put no on there, that it would go through anyhow." On the other hand, Mrs. Foster testified that she undertook to impress Christian with the vital importance of the question, but that he nevertheless stated to her that he had never had automoible insurance cancelled or refused.

French Lilly of Oceana, in Wyoming County, an agent for the defendant company, testified that "in the neighborhood of July in 1956", the plaintiff showed to the witness a letter disclosing that the plaintiff's automobile insurance with another company was being cancelled and that thereupon the witness refused to write a policy of insurance on behalf of the defendant company covering plaintiff's automobile. French Lilly further testified that some time thereafter the policy written by Mrs. Foster was mailed to him, inasmuch as plaintiff also resided in Wyoming County, and that he thereupon mailed the policy to the plaintiff, not at that time being aware of the fact that the policy was written for the same man who had been refused insurance previously by the witness. In the meantime, the plaintiff had an accident involving a collision of his automobile with a cow. This was brought to the attention of the witness at his office at Oceana, and he went to plaintiff's home to call upon him. It was then for the first time that French Lilly, according to his testi-

mony, identified the plaintiff as the man for whom he had previously refused to write automobile insurance. The witness testified that he asked the plaintiff whether or not he had told Mrs. Foster that previously he had been refused insurance, and that the plaintiff replied that Mrs. Foster "never asked me that question."

During December, 1956, the home office of the defendant company at Charlottesville, Virginia, received a confidential credit report relating to the plaintiff. As a consequence thereof, the home office wrote a letter to the plaintiff, dated December 20, 1956, three days after the automobile was demolished, notifying the plaintiff that his insurance policy would be cancelled as of January 2, 1957, and advising him to obtain proper insurance in the meantime with another company. At the time the letter of December 20 was written, the home office did not know of the accident involving the cow, or of the occurrence which resulted in the destruction of the automobile, and did not know of the fact that the application made by plaintiff contained a false statement of facts. Later, however, the home office learned of the false answer contained in the application; and on March 8, 1957, wrote a letter to the plaintiff detailing the facts in relation to the false answer contained in the application, and notifying the plaintiff that his insurance policy was rescinded. A refund of the premium was made to the plaintiff. The defendant offered the letter of March 8 for introduction in evidence, the plaintiff objected, and the court refused to permit the introduction of such letter as a part of the evidence to be considered by the jury. The defendant, however, in order to save the point, took testimony in relation to the letter outside the presence and hearing of the jury, and the letter was made a part of the record.

After the completion of the testimony at the trial before a jury, the defendant made a motion for a directed verdict in its favor, which motion was overruled. Thereupon, the court made the following statement to the jury:

"Ladies and gentlemen of the jury, there are two questions to be decided in this case. One is a question of law and the court has to decide that. The other is a question of fact and the jury has that to decide. By agreement of counsel you will be submitted one question only, what was the fair market value of this vehicle at the time of the loss of it. A verdict has been prepared for you with the amount in dollars left blank. I will ask you to take this, go to your room, select a foreman, and when you have agreed upon a verdict, come back into court."

The final order contains the following language:

"* * * Thereupon the Court and the jury heard the evidence on behalf of the plaintiff and that on behalf of the defendant, and at the conclusion of all the evidence, it was agreed and the Court ruled and announced its ruling to the jury that the question of liability was a question of law for the Court to decide and that the jury should inquire only as to the market value of the automobile in question and the jury retired to its room to consider said inquiry of damage and after a time returned with the verdict in the following words and figures:

'By agreement of counsel and upon direction of the Court, we the jury agree and find that the fair market value of the vehicle which is the subject matter of this controversy at the time of the loss was $2,800.00.—

Henry M. Houck'

"Whereupon the verdict of the jury was received and the jury was discharged from further service in this cause and the Court took time to consider of its ruling on the issue of liability as a matter of law and after the submission of written briefs by counsel for plaintiff and counsel for the defendant, the Court rendered its written opinion, which said opinion is hereby ordered filed as part of the record hereof and by which said written opinion the Court doth find and so adjudge that the plaintiff is entitled to a verdict against the defendant in

the sum of $271.45, being the market value of the automobile in question as found by the jury's verdict less the amount of the *mortgate* previously paid to the mortgagee, and the plaintiff is also awarded interest and his costs herein expended, to which ruling of the Court, the defendant excepts."

It is obvious, therefore, that counsel for the parties, with the concurrence of the court, stipulated and agreed that the only question of fact was the fair market value of the automobile at the time of its destruction and that the question of liability was one of law for the court.

The defendant paid Commercial Credit Corporation, the innocent mortgagee, the sum of $2,528.55. The trial court deducted this sum from $2,800.00, the value placed on the automobile by the jury's verdict, and entered judgment for the plaintiff for the balance, amounting to $271.45. In his written opinion, which was made a part of the record, the eminent trial judge stated:

"I am of the opinion that the knowledge of the agent of the company at Oceana is imputed to its principal, the defendant company, and the defendant company having had knowledge of a prior cancellation through its agent and in its principal offices, had an election to either treat the policy as void or rescind it as of a future date. The company elected to rescind and prior to the date of rescinding, the loss occurred."

Prior to the time of the trial, the defendant filed its specification of defense in accordance with the provisions of Code, 56-4-21, a portion of which was as follows: "That the plaintiff fraudulently procured the said policy of insurance by the wilful, intentional, making of false and fraudulent answers and misrepresentations upon his application for said policy of insurance, with full knowledge at the time of making said false statements and answers that the defendant would not have issued said policy of insurance had the defendant known that the statements and answers as given were false. That said false representations were to the effect that the plaintiff

had not been involved in any previous accidents and that he had not had any previous automobile insurance cancelled, nor had any insurance company previously refused to insure him on such automobile insurance." Thereupon, the plaintiff had the right to, but did not, file a statement in writing stating his intention to rely upon matters of waiver or estoppel, in accordance with the provisions of Code, 56-4-22, a portion of which statute is as follows: "But if the plaintiff intends to rely upon any matter in waiver, estoppel, or in confession and avoidance of any matter which may have been stated by the defendant as aforesaid, the plaintiff must file a statement in writing, specifying in general terms the matter on which he intends so to rely; and such statement must be verified by the oath of the plaintiff, or some other credible person, to the effect that the affiant believes the matter of reply therein stated will be supported by evidence at the trial." These statutory provisions are mandatory. *Rubenstein* v. *Metropolitan Life Insurance Co.*, 118 W. Va. 367, 372, 190 S. E. 531, 534. "Plaintiff cannot, at the trial or in the appellate court, rely on an estoppel not set forth in his reply." *Capehart* v. *Mutual Benefit Health and Accident Ass'n.*, 111 W. Va. 317, syl., 161 S. E. 609. See also *Duncan* v. *Federal Union Insurance Co.*, 113 W. Va. 71, 166 S. E. 813. We need not decide whether or not the knowledge of defendant's agent in Wyoming County may be imputed to the defendant, so as to form the basis of waiver or estoppel, though the policy was written by another agent residing in another county. See *Kincaid* v. *Equitable Life Assur. Soc. of U. S.*, 116 W. Va. 672, pt. 2 syl., 183 S. E. 40. Under the statute and prior decisions of this Court, the plaintiff filed no pleading to form the basis of a defense based on waiver or estoppel.

Where an applicant for insurance imparts correct information but the agent, without the knowledge of the applicant, records the answers incorrectly, parol evidence may be introduced to show such facts. The acts of the agent under such circumstances are binding upon the insurer. But it is otherwise if the applicant knows that

the facts are recorded falsely in the application. *Schwarzbach* v. *Ohio Valley Protective Union*, 25 W. Va. 622, syl. 12, and page 663; *Deitz* v. *Insurance Company*, 31 W. Va. 851, 857, 8 S. E. 616, 620; *Shinn* v. *West Virginia Insurance Co.*, 104 W. Va. 353, pt. 2 syl., 140 S. E. 61; *Kincaid* v. *Equitable Life Assur. Soc. of the U. S.*, 116 W. Va. 672, 676, 183 S. E. 40, 43. "The insurer is not precluded from setting up the falsity of answers in the application where it appears that insured knew at the time they were being written or before signing the application that they were written falsely in order to defraud the company." 45 C.J.S., Insurance, Section 732, page 741. See also 29 Am. Jur., Insurance, Section 847, page 650. "The insurer is not estopped to avoid the policy where both the applicant and the insurer's agent know that material answers contained in the application are false." *New York Life Ins. Co.* v. *Eicher*, 198 Va. 255, 93 S. E. 2d 269, 274. "No agent has power to perpetrate a fraud upon his principal. If the applicant knows that there are misrepresentations in the answer as written and that they are material, there is fraud in the inducement when a policy is issued upon their faith. He cannot depend upon the power of the agent, in the language of the street, to put it over." *Mutual Ben. Health & Accident* v. *Ratcliffe*, 163 Va. 325, 175 S. E. 870, 874. Giving the plaintiff's testimony the most favorable construction, it cannot avail him because of the fact that he admits that he knew the answer was false when it was written and when he signed the application.

The false answer related to a vitally material matter. 45 C.J.S., Insurance, Section 605, page 438. A reasonable inference from plaintiff's testimony is that he recognized that the policy would not have been issued had the application contained a truthful answer.

Fraud on the part of the insured in the procurement of the policy, or a false statement by the insured relative to a material fact in the application therefor is sufficient to defeat a recovery in an action on such policy. "An insurance company may avoid liability on a policy ob-

tained through the fraud of insured or of his agent, except, * * * where the circumstances establish a waiver of, or an estoppel to assert, such fraud. Although in some jurisdictions it is held that a contract of insurance procured by fraud is void, as a general rule, such a contract is voidable at the option of insurer on discovery of the fraud." 45 C.J.S., Insurance, Section 473(2), page 152. See also 29 Am. Jur., Insurance, Section 524, page 422. It has been held that, under such circumstances, "the policy will ordinarily be forfeited." *Faulkiner* v. *Equitable Life Insurance Co.*, 144, W. Va. 193, syl., 107 S. E. 2d 360. It has been held also that the policy under such circumstances is rendered "void". *Cook* v. *Farmers Mut. Life Ass'n of W. Va.*, 139 W. Va. 700, pt. 1 syl., 81 S. E. 2d 71. It has been held that, under such a state of facts, "the policy is thereby forfeited." *Saltesz* v. *The Sovereign Camp of the Woodmen of the World*, 110 W. Va. 513, syl., 159 S. E. 513. Perhaps it would be more logical to say that the policy, under such circumstances, is voidable at the option of the insurer, inasmuch as the policy may be given vitality by a factual situation amounting to a waiver or estoppel on the part of the insurer. No matter what the accurate terminology may be, it is clear that, in the absence of pleadings and proof disclosing waiver or estoppel, the false statement by the insured relative to a material fact in the application is sufficient to defeat recovery. Therefore, the defendant's motion for a directed verdict, made at the conclusion of all the testimony, should have been sustained.

For the reasons stated, the judgment of the Circuit Court of Wyoming County is reversed, the verdict is set aside, and the case is remanded for a new trial.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*